**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

DAVID HERNANDEZ,

       Plaintiff,

vs.                                                              No. CIV 12-0907 JB/WPL

MENLO LOGISTICS, INC., HEWLETT-PACKARD, CO.,
TAURUS SOUTHERN INVESTMENTS, LLC
D/B/A CLUB DEAL 21, and JOSE ALVAREZ,

       Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Remand and Alternative Request for Jurisdictional Discovery, filed September 26, 2012 (Doc. 12)("Motion to Remand"). The Court conducted a hearing on November 29, 2012. The primary issues are: (i) whether Defendant Menlo Logistics, Inc.'s Notice of Removal to the United States District Court for the District of New Mexico, filed August 27, 2012 (Doc. 1)("Notice of Removal"), Defendant Hewlett-Packard, Co.'s Consent to Removal, filed August 27, 2012 (Doc. 1-2), and Defendant Taurus Southern Investments, LLC d/b/a Club Deal 21's Consent to Removal, filed August 27, 2012 (Doc. 1-3), were untimely; (ii) whether Menlo Logistics failed to comply with the provisions of 28 U.S.C. § 1446(a) when it filed its Notice of Removal, because it did not attach copies of the process it served, and, if so, whether this failure constitutes a ground for remand; and (iii) whether Menlo Logistics and Hewlett-Packard have upheld their burden of demonstrating that they properly removed Plaintiff David Hernandez' Original Complaint for Personal Injury Damages Arising From an on the Job Injury Caused by a Third Party, filed August 27, 2012 (Doc. 1-1)("Complaint"), because Hernandez fraudulently joined Defendant Jose Alvarez to defeat

diversity jurisdiction.   If the Court denies the Motion to Remand on all of the foregoing grounds, two alternative primary issues are:   (i) whether Hernandez is entitled to jurisdictional discovery to determine if removal was timely, there are defects in the removal procedure, and Alvarez properly was joined; and (ii) whether the removal is barred by 28 U.S.C. § 1445(c), which prohibits removal of "civil action[s] . . . arising under the workmen's compensation laws" of a forum state.   The Court will grant the Motion to Remand on the ground that it does not have subject-matter jurisdiction over the claim, because Menlo Logistics and Hewlett-Packard have failed to sustain their burden of demonstrating that Hernandez fraudulently joined Alvarez.

The Court does not agree with Hernandez' argument that Menlo Logistics' Notice of Removal and Hewlett-Packard's and Taurus Southern's consents to removal were untimely and that Federal Rule of Civil Procedure 6(a), which governs the computation of time periods in statutes that do not "specify a method of computing time," does not extend the 30-day deadline for removal established in 28 U.S.C. § 1446(b) from a Sunday to the following Monday.   *See* Motion to Remand ¶ 23 n.2, at 8 (quoting Fed. R. Civ. P. 6(a)).   The Court concludes that, contrary to Hernandez' contention, *see* Motion to Remand ¶ 23 n.2, at 8, the thirty-day time period articulated in § 1446(b) is not a method of computing time, but rather is a time deadline.   Accordingly, because § 1446(b) does not contain its own method of computing time, the removal statute is subject to rule 6(a)'s computation procedure.   Thus, although the thirty-day deadline for removal set forth in § 1446(b) fell on Sunday, August 26, 2012, that deadline was computed to fall on Monday, August 27, 2012, by virtue of rule 6(a).   Accordingly, Menlo Logistics' Notice of Removal, and Hewlett-Packard's and Taurus Southern's accompanying consents to removal, were timely filed.

The Court also does not agree with Hernandez' argument that Menlo Logistics' failure to comply with the requirements of 28 U.S.C. § 1446(a) -- which requires that a notice of removal contain a copy of all process served in an action -- or with the requirements of D.N.M.LR-Civ. 81.1A -- which grants a party twenty-eight days after removal to file the necessary attachments -- constitutes grounds for remand.  *See* Motion to Remand ¶ 26, at 10; Transcript of Hearing at 25:1-6 (taken November 29, 2012)("Tr.")(Isaac).[1]   The Court concludes that Menlo Logistics' failure to attach the required summonses to the Notice of Removal was a de minimis procedural defect, that Menlo Logistics cured the defect, and that the defect did not prejudice Hernandez or impair the Court's ability to hear the case.   Thus, the defect does not merit remand.

The Court agrees with Hernandez' argument that Menlo Logistics and Hewlett-Packard have failed to meet their burden of demonstrating that Hernandez fraudulently joined Alvarez to defeat diversity jurisdiction by establishing that there is no possibility that Hernandez would be able to establish a cause of action against Alvarez.   Menlo Logistics and Hewlett-Packard argue that they were special employers of both Hernandez and Alvarez, that the New Mexico Workers' Compensation Act ("NMWCA"), N.M. Stat. Ann. §§ 52-5-1 to 52-5-22, therefore covered them, that Alvarez was Hernandez' co-employee, and that Alvarez therefore also is entitled to immunity from Hernandez' claims under the NMWCA's exclusivity provision.   *See* Defendant Menlo Logistics Inc. and Hewlett Packard, Co.'s Response to Plaintiff's Motion to Remand and Alternative Request for Jurisdictional Discovery, filed Oct. 10, 2012, at 3 (Doc. 18)("Response").

The Court concludes that the Complaint's allegations -- upon which Menlo Logistics and

---

[1]   The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.   Any final transcript may contain slightly different page and/or line numbers.

Hewlett-Packard solely rely to substantiate their claim of fraudulent joinder -- are not sufficient to establish that Hernandez was the direct or special employee of Menlo Logistics or Hewlett-Packard or that Alvarez was Hernandez' co-employee.   Rather, there is a possibility that Hernandez did not have an employment relationship with Menlo Logistics and/or Hewlett-Packard and that, even if Hernandez was a special employee, that Alvarez was not Hernandez' co-employee, because Alvarez was a special employee working for a different direct employer than Hernandez' direct employer or that Alvarez was an independent contractor.   In either of these cases, Alvarez would not be considered Hernandez' co-employee, entitled to immunity under the NMWCA, and Menlo Logistics and Hewlett-Packard's argument that the NMWCA's immunity provisions barred Hernandez' claims against Alvarez would fail.   The Court also concludes that Menlo Logistics and Hewlett-Packard have failed to demonstrate that the Complaint's allegations indicate that they have complied with the insurance provisions in the NMWCA or that the Complaint's allegations could not possibly fall into the exception to the NMWCA's immunity provisions set forth in *Delgado v. Dodge Phelps Chino, Inc.*, 131 N.M. 272, 34 P.3d 1148 (2001).   Thus, Menlo Logistics and Hewlett-Packard have not established that Alvarez is immune pursuant to the NMWCA from Hernandez' claims, which is the basis of their fraudulent joinder contention.   Accordingly, the Court grants the Motion to Remand for lack of subject-matter jurisdiction.

The Court denies Hernandez' request for jurisdictional discovery to determine "whether Defendant Menlo's removal was timely and whether there are defects in removal procedure and whether co-defendant Jose Alvarez is properly joined as a defendant in this case," Motion to Remand ¶ 31, at 12, which Hernandez seeks in the event the Court does not grant the Motion to

Remand.  Because the Court grants the Motion to Remand on the ground that Menlo Logistics and Hewlett-Packard have failed to satisfy their burden of demonstrating that Hernandez joined Alvarez fraudulently for the purpose of defeating diversity jurisdiction, Hernandez' motion in the alternative for jurisdictional discovery is moot.

The Court also denies Hernandez' conditional request to remand the Complaint on the ground that the Complaint constitutes a "'civil action . . . arising under the workmen's compensation laws of [New Mexico]'" within the meaning of 28 U.S.C. § 1445(c).  Motion to Remand ¶ 33, at 13 (quoting 28 U.S.C. § 1445(c)).  Because the Court does not find that Hernandez' exclusive remedy against Alvarez is pursuant to the NMWCA, Hernandez' alternative motion to remand pursuant to § 1445(c) is moot.

## FACTUAL BACKGROUND

Hernandez alleges in his Complaint that, on or about November 16, 2009, he, while working in the "course and scope of his employment with his employer Spherion Atlantic General Contractors at a job site owned by Defendant Taurus," and while "under the control of Defendant Menlo and Defendant Hewlett," suffered severe, debilitating, and permanent personal injuries when a forklift operated by Alvarez without adequate safety precautions ran over his leg and foot, and severed his foot.  *See* Complaint ¶ 6, at 2.  Hernandez asserts that "[o]ne or more of the . . . acts or omissions of Alvarez in the course and scope of his employment with Defendants, constituted negligence, which negligence was the proximate cause of the injuries to Plaintiff." Complaint ¶ 14, at 5.

Hernandez alleges that, at the time of his accident, the "warehouse and the workers inside were under the control of Defendant Menlo and Defendant Hewlett," who "exercised actual and

contractual right of control on the job, including control over safety equipment, materials used on the job, inspection and approval of the work and compliance with OSHA requirements." Complaint ¶ 6, at 2. Hernandez also asserts that the "Defendants Menlo and Hewlett had control over the manner, methods and procedures that the employees, agents, and representatives used in carrying out assigned duties," Complaint ¶ 7, at 3, that Menlo Logistics and Hewlett-Packard "retained contractual and actual control over the entire job regarding procedure, completion time, safety on the job, scheduling of work and authority to specify insurance coverage and other details of the work," Complaint ¶ 7, at 3, and that Menlo Logistics and Hewlett-Packard were "engaged in a joint enterprise" with a "mutual right of control," Complaint ¶ 15, at 5.

Hernandez alleges that he is a resident of New Mexico, that Menlo Logistics and Hewlett-Packard are Delaware corporations doing business in New Mexico, that Taurus Southern is a Florida corporation doing business in New Mexico, and that Alvarez is a New Mexico resident. *See* Complaint ¶¶ 1-5, at 1-2.

## PROCEDURAL BACKGROUND

On May 3, 2012, Hernandez filed his Complaint in the First Judicial District Court, Santa Fe County, State of New Mexico, and brought negligence claims against all of the Defendants. Hernandez served Menlo Logistics with a copy of the Complaint on July 27, 2012. On August 27, 2012, Menlo Logistics removed the case to this Court. *See* Notice of Removal at 1. The Notice of Removal did not contain a copy of the summonses for Menlo Logistics or Taurus Southern. Hewlett-Packard and Taurus Southern filed their consents to removal on August 27, 2012. *See* Hewlett-Packard's Consent to Removal at 1; Taurus Southern's Consent to Removal at 1. On September 4, 2012, the Defendants filed Menlo Logistics, Inc. and Hewlett-Packard, Co.'s Motion

to Dismiss Based on Workers Compensation Exclusivity in Lieu of Answer ("Motion to Dismiss").  *See* Doc. 10.

On September 26, 2012, Hernandez filed his Motion to Remand, requesting that the Court remand the case pursuant to 28 U.S.C. § 1447(c) on the grounds that there are defects in the removal procedure and that the Court lacks subject-matter jurisdiction over the case. Alternatively, Hernandez requests jurisdictional discovery and remand pursuant to 28 U.S.C. § 1445(c).  On September 27, 2012, Menlo Logistics filed a notice and amended notice of transmittal of state court documents, which included the summonses for Menlo Logistics and Taurus Southern.  *See* Notice of Filing of Record Before the First Judicial District Court, filed September 27, 2012 (Doc. 13); Amended Notice of Filing of Record Before the First Judicial District Court, filed September 27, 2012 (Doc. 14).

In support of the Motion to Remand, Hernandez advances several arguments.  First, Hernandez maintains that Menlo Logistics' Notice of Removal was untimely under the last-served defendant rule, because, under this rule, the deadline for removal fell on Sunday, August 26, 2012, which was thirty days from the date Menlo Logistics received the Complaint, and Menlo Logistics filed its Notice of Removal on Monday, August 27, 2012, which was the thirty-first day.[2]  *See*

---

[2]  In its Motion to Remand, Hernandez initially argued that the Notice of Removal was untimely, because the first-served defendant rule should apply and under that rule the deadline for the filing was 30 days from the date Hernandez served the first defendant, i.e., August 15, 2012. *See* Motion to Remand ¶ 17, at 5-6.  Hernandez argued that Menlo Logistics filed the Notice of Removal on August 27, 2012, which was 42 days after the date he served the first defendant Taurus, and therefore that the Notice of Removal was untimely.  *See* Motion to Remand ¶17, at 6. While Hernandez recognized that the Court previously had rejected the first-served defendant rule, and adopted and applied the last-served defendant rule, *see Sawyer v. USAA Ins. Co.*, 839 F. Supp. 2d 1189, 1208 (D.N.M. 2012)(Browning, J.), Hernandez nonetheless argued that the first-served defendant rule should apply.  *See* Motion to Remand ¶¶ 19, 20, at 7.  In the Plaintiff's Reply in Support of Motion to Remand and Alternative Request for Jurisdictional Discovery, filed October

Motion to Remand ¶ 21, at 8.   Hernandez further argues that, for the same reason the Notice of Removal was untimely, the consents to removal filed by Defendants Hewlett-Packard and Taurus Southern on August 27, 2012, also were untimely.   *See* Motion to Remand ¶ 25, at 10.

Hernandez contends that the Defendants cannot invoke rule 6(a), the rule that generally governs the "computing any time period specified in these rules, . . . or in any statute *that does not specify a method of computing time*," Fed. R. Civ. P. 6(a)(emphasis added), to extend the thirty-day deadline for the Notice of Removal and the consents to Monday, August 27, 2012. Motion to Remand ¶ 23, at 8-9; Reply ¶ 3, at 2.   Hernandez argues that rule 6(a) is inapplicable, because the removal statute set forth in 28 U.S.C. §1446(b) specifies a method of computing time, and according to Hernandez, that method of computing time is the thirty-day deadline that § 1446(b) prescribes.   *See* Reply ¶ 3, at 2.

Hernandez next argues that the Court should grant the Motion to Remand on the ground that Menlo Logistics failed to comply with 28 U.S.C. § 1446(a), which requires that a Notice of Removal contain a short and plain statement of the grounds for removal "'together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.'" Motion to Remand ¶ 26, at 10 (quoting 28 U.S.C. § 1446(a)).   Hernandez does not specify in his Motion to Remand or Reply how Menlo Logistics failed to comply with § 1446(a).   *See generally*

29, 2012 (Doc. 20)("Reply"), however, Hernandez withdrew his argument that the first-served defendant rule should apply, because Hernandez acknowledged that Congress had codified the later-served defendant rule.   *See* Reply ¶ 1, at 1 (citing Pub. L. No. 112-63, § 103(a), 125 Stat. 760, Sec. 103 (Dec. 7, 2011)(codifying the last-served defendant rule in the Federal Courts Jurisdiction and Venue Clarification Act of 2011)).   *See also Sawyer v. USAA Ins. Co.*, 839 F. Supp. 2d at 1208 & n.10 (Browning, J.)(explaining that the Court previously adopted the last-served defendant rule and that the Federal Courts Jurisdiction and Venue Clarification Act of 2011, subsequently adopted the last-served rule)(citing Pub. L. No. 112-63, 125 Stat. 758, §§ 103, 105(a) (2011)).

Motion to Remand ¶ 26, at 10-11.

In addition to asserting that there are procedural defects in the Notice of Removal that require remand, Hernandez also argues that the Court should grant the Motion to Remand, because the Court lacks subject-matter jurisdiction.  *See* Motion to Remand ¶ 30, at 12.  Specifically, Hernandez contends that Menlo Logistics and Hewlett-Packard have not met their burden of establishing that Hernandez fraudulently joined Alvarez to defeat diversity-of-citizenship jurisdiction.  *See* Motion to Remand ¶ 28, at 11.  While Menlo Logistics and Hewlett-Packard argue that "Jose Alvarez cannot be liable to Hernandez by virtue of the exclusivity provision of Section 52-1-8 of the New Mexico Workers' Compensation Act," Hernandez contends that these "unsupported allegations are wholly insufficient to establish that Defendant Jose Alvarez could not possibly be liable to the Plaintiff under New Mexico law."   Motion to Remand ¶¶ 28, 28, at 11.   Rather, Hernandez contends that he has pleaded sufficient facts to establish a viable negligence claim against Alvarez, because the evidence may show that Alvarez was "an independent contractor or otherwise not a co-employee, or that for other reasons based on the 'actual circumstances' of the case (to be developed by the evidence) that the exclusivity provisions of the New Mexico Workers' Compensation Act do not apply."   *See* Motion to Remand ¶ 29, at 11 (citations omitted).

Hernandez asks in the alternative, that if the Court does not grant the Motion to Remand on the procedural or jurisdictional grounds for remand set forth in 28 U.S.C. § 1447(c), he should get jurisdictional discovery.   Because Hernandez maintains that it is "unclear to the Plaintiff whether Defendant Jose Alvarez has been served[,]" he requests "that the Court permit jurisdictional discovery as to whether Defendant Menlo's removal was timely and whether there are defects in

removal procedure and whether co-defendant Jose Alvarez is properly joined as a defendant in this case."   Motion to Remand ¶ 31, at 12.

Finally, Hernandez seeks -- also in the event that the Court does not grant the Motion to Remand on procedural or jurisdictional grounds -- remand on the ground that 28 U.S.C. § 1445(c) prohibits removal of civil actions "'arising under the workmen's compensation laws'" of a state. Motion to Remand ¶ 32, at 13 (quoting 28 U.S.C. § 1445(c)).   Hernandez contends that this action "aris[es] under" the workmen's compensation laws of the State of New Mexico, because Menlo Logistics and Hewlett-Packard contend that Hernandez' exclusive remedy against them is pursuant to the NMWCA.   *See* Motion to Remand ¶ 32, at 13.   Hernandez asserts that, to determine whether a claim "arises under" a state's workmen's compensation laws, a court applies the same framework for analyzing whether a claim "arises under" federal law for purposes of 28 U.S.C. § 1331.   Motion to Remand ¶ 33, at 13 (citing *Reed v. Heil Co.*, 206 F.3d 1055, 1059 (11th Cir. 2000)).   The Supreme Court of the United States has interpreted the language "arises under" within the meaning of § 1331 to include cases where a complaint establishes "'either that federal law creates the cause of action or that the Plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'"   Motion to Remand ¶ 34, at 14 (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)).   Hernandez contends that, if the Court agrees with the Defendants' argument that

> from Plaintiff's pleading *alone* the Court could only conclude that "Plaintiff's exclusive remedy against Defendants Menlo and Hewlett-Packard for injuries he alleges in his Complaint is pursuant to the [New Mexico] Workers' Compensation Act[,]" . . . then Plaintiff's right to relief "necessarily depends on resolution of substantial questions' of the New Mexico Workers' Compensation Act."

Motion to Remand ¶ 34, at 14 (quoting Motion to Dismiss at 5).   Accordingly, Hernandez argues

that the Court should remand the case pursuant to 28 U.S.C. § 1445(c).

Menlo Logistics and Hewlett-Packard filed their Response on October 10, 2012. In opposition to Hernandez' argument that the Notice of Removal and accompanying consents were untimely, Menlo Logistics and Hewlett-Packard contend that rule 6(a) governs the computation of the thirty-day time period for removal set forth in 28 U.S.C. § 1446(b), and that, under rule 6(a), the thirty-day deadline expired on Monday, August 27, 2012, which was the date on which Menlo Logistics filed its Notice of Removal and on which Hewlett-Packard and Taurus Southern filed their consents to removal. *See* Response at 7. Menlo Logistics and Hewlett-Packard maintain that Hernandez mistakenly argues that the Defendants are seeking an "extension" of time from Sunday, August 26, 2012, to Monday, August 27, 2012. *See* Response at 7. Rather, Menlo Logistics and Hewlett-Packard argue that rule 6(a) computes the thirty-day time period to expire on the thirty-first day, which was Monday, August 27, 2012. *See* Response at 6 & n.1. Thus, Menlo Logistics and Hewlett-Packard conclude that the Notice of Removal and accompanying consents were timely filed. *See* Response at 7.

In response to Hernandez' argument that Menlo Logistics failed to comply with the requirements set forth in 28 U.S.C. § 1446(a), Menlo Logistics and Hewlett-Packard contend that the "Plaintiff does not state how Defendant Menlo failed to comply with 28 U.S.C. § 1446(a)," and that "without knowing how Defendant Menlo has failed to comply . . . Defendant Menlo is unable to address Plaintiff's arguments or any of the case law cited therein." Response at 9. Menlo Logistics nonetheless argues that "it complied with § 1446(a) and all of the state court documents served on Menlo were attached, made part of the Notice of Removal, or subsequently filed with the Court." Response at 9-10.

In response to Hernandez' argument that the Defendants have failed to sustain their burden of demonstrating that he joined Alvarez fraudulently to defeat diversity jurisdiction, Menlo Logistics and Hewlett-Packard contend that the "Plaintiff has . . . failed to set forth how Defendant Jose Alvarez can be liable to the Plaintiff for any amount," that Hernandez' contentions "do[] not defeat the argument that Defendant Jose Alvarez has been joined solely for the purpose of defeating diversity jurisdiction," and that, "[t]herefore, as a matter of law, Plaintiff does not have any claim against Defendant Jose Alavrez . . . and [Alvarez] should be disregarded in determining diversity of citizenship."   Response at 11.

On October 29, 2012, Hernandez filed his Reply.   Hernandez argues that, because the Defendants themselves acknowledge that rule 6(a) does not provide for an extension of the time period in which to file the Notice of Removal, this ambiguity should be resolved against removal given that courts must strictly construe statutory removal procedures.   *See* Reply ¶ 2, at 2 (citations omitted).   Hernandez further contends that the Defendants have failed to "cite a single controlling case from the Supreme Court or Tenth Circuit to show that the 'within 30 days' requirement of § 1446(b) of the strictly-construed removal statute should be interpreted to mean '31 days' or '32 days' (or longer) by virtue of Rule 6(a)."   Reply ¶ 5, at 3-4.

Hernandez also maintains that the Defendants have not met their burden to show that Alvarez cannot be liable to Hernandez under any circumstances, but rather that they have "attempt[ed] to improperly 'shift' their burden of proof to the Plaintiff by asserting [in their Response] that 'Plaintiff has still failed to set forth how Defendant Jose Alvarez can be liable to the Plaintiff.'"   Reply ¶ 9, at 6 (quoting Response at 10-11).   Hernandez further contends that Menlo Logistics and Hewlett-Packard's argument that Alvarez cannot be liable to him is based upon the

affirmative statutory defense of exclusivity under the NMWCA, that the Defendants have failed to plead this defense in an answer, and that the Defendants therefore have waived the defense. *See* Reply ¶ 10, at 6.

The Court held a hearing on the Motion to Remand on November 29, 2012. At the hearing, Hernandez first addressed his contention that the Notice of Removal is untimely and that rule 6(a) cannot be used to extend the thirty-day time period set forth in 28 U.S.C. §1446(b). In support of this claim, Hernandez maintained that the issue whether both the Notice of Removal and the consents to removal were timely turns on whether the removal statute set forth in 28 U.S.C. § 1446(b) specifies a method for computing time, because if a method is specified, then rule 6(a), by its terms, is not applicable. *See* Tr. at 8:10-11, 17:7-9 (Isaac). Hernandez further argued, as in his memoranda supporting his Motion to Remand, that § 1446(b) contains a method for computing time, i.e., namely, the thirty-day deadline specified therein, and that rule 6(a), therefore, cannot apply to extend the deadline. *See* Tr. at 9:1-5, 15:6-12 (Isaac). Hernandez conceded: "I have not found a case that says [rule 6(a) does not apply to the removal statute,] just as much as [the Defendants] have not found a case that says that [rule 6(a)] does [apply]." Tr. at 10:9-11 (Isaac). Hernandez maintained, however, that if there is any doubt as to whether rule 6(a) applies, that doubt must be resolved in favor of remanding the case. *See* Tr. at 8:13-16, 10:12-14 (Isaac).

In response to Hernandez' argument that rule 6(a) does not apply to the removal statute, the Defendants argued that § 1446(b) specifies a thirty-day period of time, but that it does not specify a "method of computing time" within the meaning of rule 6(a). *See* Tr. at 11:16-18, 13:1-5 (Franke). Menlo Logistics and Hewlett-Packard argue that, because § 1446(b) does not specify a method of computing time, rule 6(a)'s method of computation applies, and under rule 6(a), the

- 13 -

thirty-day deadline should be computed to fall on Monday, August 27, 2012.  *See* Tr. at 13:6-8, 14:9-19 (Franke).

In analyzing the question whether rule 6(a) applies to the removal statute, the Court pointed out that the Advisory Committee's notes to the 2009 amendments to rule 6(a) provide an example of a statute, i.e., 2 U.S.C. § 394, that contains a method of computing time, and the Court further noted that § 394 is the "kind of statute that rule 6(a) doesn't apply to if Congress has taken the time to specify a method of computing."  Tr. at 13:1-10 (Court).  The Defendants agreed that § 394 is a statute to which rule 6(a) would not apply and argued that § 1446(b) contains no method of computing time equivalent to the method of computing time specified in § 394.  *See* Tr. at 12:11-13:2 (Franke).

At the conclusion of the discussion whether rule 6(a) applies to the removal statute, the Court indicated:

> [My] inclination is to think that . . . [the removal statute] gives a deadline, but . . . [that the deadline does not] tell you anything about computing time.  It just tells you simply what the deadline is.  And, so I think the rules make a distinction between deadlines, which I think is the 30 days, and computing time, and I don't think 1446 has a method of computing time, so I am inclined to think that this was timely filed.

Tr. at 16:12-25 (Court).

Hernandez next argued, with respect to the question whether Menlo Logistics complied with the requirements of 28 U.S.C. § 1446(a) when it filed its Notice of Removal, that Menlo Logistics was required to attach a copy of all process served in the action, but that Menlo Logistics failed to attach the summonses it or Taurus Southern received.  *See* Tr. at 18:21-19:4 (Isaac). Hernandez conceded that Menlo Logistics later filed the necessary summonses, but argued that this was not within the thirty-day time period that § 1446(b) prescribes.  *See* Tr. at 19:5-7 (Isaac).

- 14 -

After Hernandez completed his argument, the Court indicated that, in New Mexico, sometimes state court records are not up to date on the day a party removes a case to federal court and that often a party must supplement the record once it has received the necessary state court documents. *See* Tr. at 20:7-16 (Court). The Court also indicated that the United States Court of Appeals for the Tenth Circuit recently issued an opinion indicating that failure to attach documentation to a Notice of Removal is a de minimis defect. *See* Tr. at 20:17-20 (Court). *See also Countryman v. Farmers Ins. Exchange*, 639 F.3d 1270, 1272-73 (10th Cir. 2011)("The majority view is that a removing party's failure to attach the required state court papers to a notice of removal is a mere procedural defect that is curable.").

The Court next offered the Defendants an opportunity to respond to Hernandez' argument regarding compliance with § 1446(a). The Defendants pointed out that D.N.M.LR-Civ. 81.1A provides that, upon removal, the state court record must be filed with the federal district court within twenty-eight days. *See* Tr. at 23:4-7 (Franke). Hernandez argued, however, that Menlo Logistics did not file the state court record within twenty-eight days, but rather within thirty days. *See* Tr. at 25:1-6 (Isaac).

After the conclusion of the arguments on the question of compliance with the requirements of § 1446(a), the Court stated,

> [I]t looks like there may be a little bit of a problem with compliance with the local rules but I'm not sure that the local rules are in any way statutory in the sense that the congressional statute is. [The local rule] served the purpose of getting that state court record up here, and I think that was largely done in this case. I'm not inclined to remand on this basis.

Tr. at 26:1-7 (Court).

The Court next asked Hernandez to address the question of the Court's subject-matter

- 15 -

jurisdiction and the issue of Alvarez' alleged fraudulent joinder.   In support of his argument that

the Court lacks subject-matter jurisdiction over the case, Hernandez indicated that Alvarez is a

citizen of New Mexico and that diversity jurisdiction therefore does not exist.   *See* Tr. at 26:12

(Isaac).   In response to the Court's inquiry whether Alvarez worked for the same company as

Hernandez, he indicated that he does not know where or for whom Alvarez worked, and that it is

not his burden to produce this evidence.   *See* Tr. at 27:16-19 (Isaac).   Rather, Hernandez argued

that it is Menlo Logistics' and Hewlett-Packard's burden to produce evidence indicating that there

is no possibility that Hernandez can recover against Alvarez, and Hernandez maintained that the

Defendants have "produced zero evidence to say who[m] he worked for," such as an affidavit from

Menlo Logistics or from Hewlett-Packard.   Tr. at 27:20-25 (Isaac).

        The Court next asked Hernandez under what legal theory he could sue Alvarez given that

the "[NMWCA] cut off employee versus employee claims."   Tr. at 28:20-22 (Court).   Hernandez

argued that he could prevail on several grounds:   (i) the exclusive remedy defense under the

NMWCA may not apply, because to be entitled to the defense, the party asserting the defense must

plead the affirmative defense or it is waived, prove insurance coverage, prove the right to control

the details of the work, prove an express or implied contract of hire, and prove work in furtherance

of the defendant, *see* Tr. at 29:15-18, 30:1-13, 40:13-25 (Isaac); and (ii) the exclusive defense may

not apply if a plaintiff has pled willful conduct under the exception set forth in *Delgado v. Phelps

Dodge Chino, Inc.*, 131 N.M. 272, 34 P.3d 1148 (2001).   With respect to evidence of willfulness,

Hernandez provided an example:

        [T]he forklift alarm on this forklift was intentionally removed, because it annoyed
        the workers.   That's just one issue that my client told me about. . . .   Another
        example would be[, and] again I have no evidence of this, I'm just giving the Court
        an example of a possibility of recovery, was if Mr. Alvarez was not a certified

> forklift operator or was horse playing or . . . driving in a manner that endangered my client's foot or limbs recklessly or intentionally.

Tr. at 31:18-25 (Isaac).

In response to Hernandez' argument that Menlo Logistics and Hewlett-Packard failed to plead the affirmative defense of the exclusive remedy in an answer to the Complaint, the Defendants argued that rule 12(b)(6) permits defenses to be raised by way of a motion to dismiss and that Menlo Logistics and Hewlett-Packard have "clearly moved to dismiss[] based on the affirmative defense of exclusive remedy so it has been properly raised in this case." Tr. at 44:18-22 (Franke). In response to Hernandez' argument that Menlo Logistics and Hewlett-Packard failed to provide any evidence to support their assertion of fraudulent joinder, the Defendants argued that they rely on the Complaint's allegations as the basis for their fraudulent joinder claim. *See* Tr. at 34:2-6 (Franke). Menlo Logistics and Hewlett-Packard asserted that the Complaint's allegations demonstrate that Hernandez and Alvarez were co-employees. *See* Tr. at 34:9-11 (Franke). Specifically, the Defendants pointed to paragraph six of the Complaint, in which Hernandez alleges that Alvarez ran over his foot when he was "working in the course and scope of his employment and while under the control of defendants Menlo and [Hewlett-Packard]." Tr. at 34:14-18 (Franke). The Defendants maintained that this allegation establishes that Hernandez "was in the scope of his employment with special employers Menlo and [Hewlett-Packard] at the time of the accident." Tr. at 34:20-22 (Franke). The Defendants next directed the Court's attention to paragraph fourteen of the Complaint, which states that Alvarez' acts and omissions "'in the course and scope of his employment with defendants constituted negligence, which negligence was a proximate cause of the injuries to plaintiffs.'" Tr. at 35:1-3 (Franke)(quoting Complaint ¶ 14, at 5). According to Menlo Logistics and

Hewlett-Packard, paragraph fourteen "is an express allegation that defendant Alvarez was a co-employee at the time and in the course and scope of his employment."   Tr. at 35:3-5 (Franke). Menlo Logistics and Hewlett-Packard conclude that they therefore have demonstrated that the NMWCA provides the exclusive remedy for Hernandez' claims against Alvarez.   *See* Tr. at 35:9-17 (Franke).   Menlo Logistics and Hewlett-Packard also further argue that the exception to the exclusive remedy set forth in *Delgado v. Phelps Dodge Chino, Inc.* applies only "in extremely egregious circumstances," which in *Delgado v. Phelps Dodge Chino, Inc.*, constituted sending an employee down a tunnel to empty a pot of melted hot slag when the employer knew that there was "an extremely high likelihood, if not certainty of death in the circumstances, and the employer forced the employee to proceed in the face of that extreme risk."   Tr. at 36:1-5 (Franke).   Menlo Logistics and Hewlett-Packard maintained that the Complaint's allegations "clearly do not rise on their face anywhere near the types of allegations that are necessary to support a Delgado cause of action."   Tr. at 36:13-16 (Franke).

Hernandez disagreed that the Complaint contained allegations indicating that Hernandez and Alvarez were co-employees.   Hernandez maintained:   "[W]e allege just the opposite and a portion [of paragraph six] was left off."   Tr. at 38:7 (Isaac).   In paragraph six, Hernandez alleges that he was working in the course and scope of his employment with his [direct] employer Spherion Atlantic General Contractors" and not in the course and scope of his employment with Menlo Logistics or Hewlett-Packard.   Tr. at 38:8-10 (Isaac).   Although Hernandez conceded that he alleged that

> Menlo and Hewlett may have had a right to control [Hernandez], nowhere in that
> pleading [did Hernandez concede that he] was an employee of Menlo or Hewlett
> Pack[ar]d or had a contract of hire with [Menlo or Hewlett-Packard].   Right of
> control does not equal the first element [of] contract of hire.   They [are] trying to

conflate those two.

Tr. at 38:10-15 (Isaac).   Furthermore, Hernandez maintained that (i) he never admitted Alvarez was an employee of Hernandez' direct employer Spherion Atlantic, (ii) he in fact does not know for whom Alvarez worked, (iii) Alvarez could have been an independent contractor who was not employed by Menlo Logistics, Hewlett-Packard, or Spherion Atlantic, and (iv) it is the Defendants' burden to show, for purposes of a fraudulent joinder claim, that Alvarez was an employee of Menlo Logistics or Hewlett-Packard.   *See* Tr. at 38:16-22, 44:3-5 (Isaac).   With respect to the argument that paragraph fourteen alleges that Alvarez was an employee of Menlo Logistics and Hewlett-Packard, Hernandez maintained that he was "not sure how we're getting from alleging [he] was an employee of Spherion . . . to equal[] Alvarez was his co-employee working for defendants [Menlo Logistics and Hewlett-Packard]."   Tr. at 38:23-25, 39:1-2 (Isaac).

In response to Menlo Logistics and Hewlett-Packard's argument that Hernandez cannot meet the requirements of the *Delgado v. Phelps Dodge Chino, Inc.* exception to the exclusive remedy defense, Hernandez argued that he alleged that the Defendants' willful conduct involved an "extreme degree of risk" of which the "defendants had actual subjective awareness of the risk involved and proceeded with conscious indifference to the rights [and] welfare of others," and that the Court cannot determine until summary judgment whether the claim will withstand scrutiny. Tr. at 39:5-15 (Isaac).   According to Hernandez, these allegations are sufficient to demonstrate that he has a possibility of prevailing in a claim against Alvarez under the *Delgado v. Phelps Dodge Chino, Inc.* exception and that this showing defeats any claim of fraudulent joinder.   *See* Tr. at 38:9-19, 39:5-10 (Isaac).

In response to Hernandez' charge that the Defendants failed to produce any evidence

showing the necessary elements to establish an exclusive remedy defense, *see* Tr. at 41:12-25, 42:1-9, 43:14-25 (Isaac), Menlo Logistics and Hewlett-Packard argued that there is no requirement that they produce any other evidence beyond the Complaint's allegations to show that they have met their burden of establishing fraudulent joinder.   *See* Tr. at 45:4-6 (Franke).   Menlo Logistics and Hewlett-Packard insisted that the Complaint's allegations, specifically paragraph fourteen, indicate that Alvarez was an employee of the Defendants.   *See* Tr. at 45:16-17 (Franke). The Court pointed out that paragraph fourteen does not indicate whether Menlo Logistics or Hewlett-Packard employed Alvarez, and inquired, "if Hernandez is an employee of Menlo Logistics," "can't [he] sue somebody that's an employee of Hewlett Packard, for example[?]"   Tr. at 45:22-25 (Court).   The Defendants conceded:   "That would be a problem, but . . . there's nothing in the law that says all of the defendants can't be a special employer."   Tr. at 46:3-7 (Franke).   The Court responded:   "I think Mr. Isaac would agree with you there's nothing that says that, but isn't that unlikely?"   Tr. at 46:12-13 (Court).   The Defendants answered:

> [N]o, actually it isn't Your Honor.   Under the law, as many defendants as meet the special employer test can be deemed to be plaintiff's special employer.   There is no case law that limits and says, well you can only have one special employer. The question is whether the requirements, the three requirements that are set out in the cases are met.   And this is where we think the allegations of the Complaint on their face actually establish all three requirements.

Tr. at 46:14-23 (Franke).

In addition to pointing to the allegations in paragraphs six and fourteen, Menlo Logistics and Hewlett-Packard argued that the allegations in paragraphs seven and fifteen establish that they have met all of the elements of the exclusive remedy affirmative defense.   *See* Tr. at 47:13-48:21 (Franke).   With respect to paragraph seven, Menlo Logistics and Hewlett-Packard argued that the allegations indicate that

- 20 -

> defendants Menlo and Hewlett had control over the manner, methods and
> procedures that the employees[,] agents and representatives used in carrying out
> assigned duties.   Defendants retained contractual and actual control over the entire
> job regarding procedure, completion time, safety on the job, scheduling of work,
> and authority to specify insurance coverage and other details of work.

Tr. at 47:13-20 (Franke).   Menlo Logistics and Hewlett-Packard argued that paragraph fifteen

alleges that they

> are engaged in a joint enterprise, which they have a mutual right of control, and
> therefore, as [the Defendants have argued], on the allegations of the Complaint
> plaintiffs are alleging [Menlo Logistics] and Hewlett Packard are a joint enterprise
> with joint right of control, that they had a contractual and actual right to control the
> details of both plaintiff Hernandez's work and defendant Alvarez's work, that they
> were actually exercising that control at the time, and were doing so with respect to
> the details of the work, which was that of Menlo and Hewlett Packard.   So, in that
> respect the Complaint . . . expressly alleges every one [of] the elements necessary to
> meet the special employer test.

Tr. at 48: 6-20 (Franke).

In response, Hernandez disagreed that the Complaint's allegations show the first element

of a contract of hire, express or implied.   *See* Tr. at 49:12-16 (Isaac).   According to Hernandez,

"[t]here's no evidence . . . period . . . that [he] worked for the defendants.   And you can have a

right of control over somebody without being their employer.   That happens all the time in

construction cases."   Tr. at 49:16-23 (Isaac).   Hernandez argued that all that he alleges in the

Complaint is that he was working in the course and scope of his employment with Spherion

Atlantic and not with Menlo Logistics or Hewlett-Packard.   *See* Tr. at 49:24-25, 50:1-2 (Isaac).

Hernandez maintained that he could have been an independent contractor, as could have Alvarez,

and that if either were true, the exclusive remedy defense would be unavailable.   *See* Tr. at 52:4-7

(Isaac).

In addition, Hernandez contended that, even if the Complaint's allegations showed all

- 21 -

three elements, the affirmative defense of exclusive remedy is not available unless Menlo Logistics and Hewlett-Packard complied with the NMWCA's insurance provision, and there is no evidence that they so complied.   *See* Tr. at 51:8-13 (Isaac).

> After hearing the parties' arguments with respect to fraudulent joinder, the Court indicated:

> My impression is that there [are] enough issues here that [the Defendants are] not going to meet the high standard for fraudulent joinder, so I'm inclined to . . . grant the motion to remand . . . , but I want to take a look at [the] special employer . . . issue[]. . . .   [But] it's going to be difficult for me to say on the record before the Court that there's no possibility of recovery here.

Tr. at 52:15-23 (Court).

Hernandez next argued in the alternative that, even if the Court were to conclude that the Defendants had satisfied their burden of demonstrating that he had no possibility of prevailing in a claim against Alvarez, because Alvarez was entitled to the exclusive remedy defense, the Court nonetheless should remand pursuant to 28 U.S.C. § 1445(c), which provides that federal courts do not have subject-matter jurisdiction of a civil action if it arises under a state's workmen's compensation laws.   *See* Tr. at 53:4-11 (Isaac).   The Court indicated that it would examine the issue, but stated that its initial impression was that the Court retained jurisdiction:   "[M]y reaction to that was . . . that [the Complaint] didn't arise under the workmen's comp laws.   Instead, this is a defense that is being raised, . . . so it didn't . . . divest[] the Court of jurisdiction."   Tr. at 53:17-21 (Court).   The Court also acknowledged, however, that if the case required resolution of a substantial state workmen's compensation issue, this state-law issue might divest the Court of jurisdiction.   *See* Tr. at 55:1-3 (Court).

The Court asked the parties whether it needed to decide the issue whether remand is required under § 1445(c) before it decided the fraudulent joinder question.   Hernandez suggested

that the Court did not need to reach this issue if the Court granted the Motion to Remand on the ground that the Defendants had failed to meet their burden of establishing fraudulent joinder.  *See* Tr. at 56:18-20, 57:6-8 (Isaac).

At the conclusion of the hearing, the Court indicated that it would take the Motion to Remand under advisement and issue an opinion regarding the Court's decision.  *See* Tr. at 58:12-15 (Court).

## RELEVANT LAW REGARDING REMOVAL

If a civil action filed in state court satisfies the requirements for original federal jurisdiction, the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court "embracing the place where such action is pending."  28 U.S.C. § 1441(a). *See Huffman v. Saul Holdings Ltd.*, 194 F.3d 1072, 1076 (10th Cir. 1999) ("When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court.")(quoting *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996)).   To remove a case based on diversity, the diverse defendant must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied.   Under § 1332(a), a federal district court possesses original subject-matter jurisdiction over a case when the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00.  *See Johnson v. Rodrigues*, 226 F.3d 1103, 1107 (10th Cir. 2000); 28 U.S.C. § 1332(a).   Diversity between the parties must be complete.   *See Caterpillar Inc. v. Lewis,* 519 U.S. at 68.

A defendant must also comply with the procedure for removal set forth in 28 U.S.C. § 1446(b).   *See Thompson v. Intel Corp.*, No. CIV 12-0620 JB/LFG, 2012 WL 3860748, at *5

(D.N.M. Aug. 27, 2012)("Because removal is entirely a statutory right, the relevant procedures to effect removal must be followed.").   A Notice of Removal must be filed within "thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."   28 U.S.C. § 1446(b).   *See May v. Bd. of County Comm'rs for Cibola County*, No. CIV 12-0676 JB/KBM, 2013 WL 2250658, at *14 (D.N.M. May 6, 2013)(Browning, J.)("Such notice of removal is proper if filed within thirty-days from the date when the case qualifies for federal jurisdiction.")(citing *Caterpillar Inc. v. Lewis*, 519 U.S. at 68-69; 28 U.S.C. § 1446(b)).   A removal that does not comply with the express statutory requirements is defective, and the case must be remanded to state court.   *See Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d at 1077.

Moreover, § 1446(a) of Title 28 of the United States Code provides that a party seeking removal of a matter to federal court shall file a notice of removal in the district and division where the state action is pending, "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."   28 U.S.C. § 1446(a).   Although a "minority view taken by some district courts is that a removing party's failure to attach the required state court papers to a notice of removal is a fatal defect that necessitates remand," the United States Court of Appeals for the Tenth Circuit rejects this view and instead adopts the majority view.   *Countryman v. Farmers Ins. Exchange*, 639 F.3d 1270, 1272 (10th Cir. 2011).   "The majority view is that a removing party's failure to attach the required state court papers to a notice of removal is a mere procedural defect

that is curable."[3]   In *Countryman v. Farmers Ins. Exchange*, the Tenth Circuit held that the

omission of a summons, which is one of the state court papers § 1446(a) requires,

> from Defendants' joint notice of removal was an inadvertent, minor procedural
> defect that was curable, either before or after expiration of the thirty-day removal
> period.   Defendants supplemented their joint notice of removal to include the
> summons, and Plaintiff was not prejudiced by the omission.   Nor was the district
> court's ability to proceed with the case materially impaired.

639 F.3d at 1273.

"It is well established that statutes conferring jurisdiction upon the federal courts, and

particularly removal statutes, are to be narrowly construed in light of [the federal courts']

constitutional role as limited tribunals."  *Pritchett v. Office Depot, Inc.*, 404 F.3d 1232, 1235 (10th

Cir. 2005) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *United

States ex rel. King v. Hillcrest Health Ctr.*, 264 F.3d 1271, 1280 (10th Cir. 2001)), *superseded on

other grounds*, 420 F.3d 1090 (2005)  *See Martin v. Franklin Cap. Corp.*, 251 F.3d 1284, 1290

(10th Cir. 2001)("'[R]emoval statutes are construed narrowly.'")(quoting *Burns v. Windsor Ins.

Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994)).   "All doubts are to be resolved against

---

[3]   *Countryman v. Farmers Ins. Exchange*, 639 F.3d at 1272-73 (citing *Cook v. Randolph County*, 573 F.3d 1143, 1150 (11th Cir. 2009) (holding that removing party's failure to include all state court pleadings and process with notice of removal was "procedurally incorrect," but was not a "jurisdictional defect"); *Usatorres v. Marina Mercante Nicaraguenses, S.A.*, 768 F.2d 1285, 1286 (11th Cir. 1985) (noting that the failure to file papers required by the removal statute may be remedied); *Riehl v. Nat'l Mut. Ins. Co.*, 374 F.2d 739, 742 (7th Cir. 1967) (holding that removing party's failure to include state court complaint with notice of removal did not deprive district court of jurisdiction, because "the omission was but a minor irregularity of no consequence" and "[t]o permit this minor irregularity to defeat the District Court's jurisdiction would be to elevate form over substance"); *Covington v. Indem. Ins. Co.*, 251 F.2d 930, 932-33 (5th Cir. 1958) (holding that removing party's failure to include "a copy of all process, pleadings and orders served upon him" was a mere procedural defect, and not a jurisdictional defect necessitating remand, and that missing state court papers could be supplied later); *Yellow Transp., Inc. v. Apex Digital, Inc.*, 406 F. Supp. 2d 1213, 1219 (D. Kan. 2005)(reaching same result where defendant inadvertently did not attach state court summons)).

- 25 -

removal." *Fajen v. Found. Reserve Ins. Co.,* 683 F.2d 331, 333 (10th Cir. 1982).   "The burden of establishing subject-matter jurisdiction is on the party claiming jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

### RELEVANT LAW REGARDING FRAUDULENT JOINDER

A defendant may remove a case to federal court based upon diversity-of-citizenship jurisdiction in the absence of complete diversity if a plaintiff joins a resident of the forum state fraudulently to defeat federal jurisdiction.   *See Am. Nat'l Bank & Trust Co. v. Bic Corp.*, 931 F.2d 1411, 1412 (10th Cir. 1991)(citations omitted).   The Supreme Court of the United States, however, has stated:   "Merely to traverse the allegations upon which the liability of the resident defendant is rested or to apply the epithet 'fraudulent' to the joinder will not suffice:   the showing must be such as compels the conclusion that the joinder is without right and made in bad faith." *Chesapeake & O.R. Co. v. Cockrell,* 232 U.S. 146, 152 (1914).   The United States Court of Appeals for the Tenth Circuit has explained that allegations of fraudulent joinder complicate the analysis whether removal is proper, because, "[w]hile a court normally evaluates the propriety of a removal by determining whether the allegations on the face of the Complaint satisfy the jurisdictional requirements, fraudulent joinder claims are assertions that the pleadings are deceptive." *Nerad v. AstraZeneca Pharms., Inc.*, No. 05-6128, 2006 WL 2879057, at *2 (10th Cir. Oct. 11, 2006) (unpublished opinion).[4]

---

[4]   The Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  *See* 10th Cir. R. 32.1(A)("Unpublished opinions are not precedential, but may be cited for their persuasive value.").   The Tenth Circuit has stated:   "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. . . .   However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision."  *United States v. Austin,* 426 F.3d 1266, 1274 (10th Cir. 2005), *cert. denied,* 546

> "In many cases, removability can be determined by the original pleadings and normally the statement of a cause of action against the resident defendant will suffice to prevent removal.   But upon specific allegations of fraudulent joinder the court may pierce the pleadings, . . . consider the entire record, and determine the basis of joinder by any means available."

*Smoot v. Chicago, Rock Island & Pac. R.R. Co*., 378 F.2d at 882 (quoting *Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964)(internal citations omitted)).

The last published decision from the Tenth Circuit to articulate the standard of a removing defendant's burden of proof for demonstrating fraudulent joinder was issued over forty years ago in *Smoot v. Chicago, Rock Island & Pacific Railroad Co.*, 378 F.2d 879 (10th Cir. 1967).   *See Zufelt v. Isuzu Motors Am., L.C.C.*, 727 F. Supp. 2d 1117, 1124 (D.N.M. 2009)(Browning, J.). The Tenth Circuit requires that fraudulent joinder be "established with complete certainty upon undisputed evidence."   *Smoot v. Chicago, Rock Island & Pac. R.R. Co.,* 378 F.2d at 882.   In *Smoot v. Chicago, Rock Island and Pacific Railroad Co*., the Tenth Circuit stated two bases for finding fraudulent joinder:   (i) "[t]he joinder of a resident defendant against whom no cause of action is stated is patent sham;" or (ii) "though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists."   378 F.2d at 882 (quoting *Dodd v. Fawcett Pubs., Inc.*, 329 F.2d at 85).   The Tenth Circuit concluded that the joinder was fraudulent, because the non-liability of the joined party was "established with complete certainty upon undisputed evidence."   378 F.2d at 882.   "This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty."   378 F.2d at 882.

---

U.S. 1194 (2006).   The Court finds that this unpublished opinion, as well as the other unpublished Tenth Circuit opinions cited herein, have persuasive value with respect to a material issue, and will assist the Court in its disposition of this memorandum opinion and order.

In *Smoot v. Chicago, Rock Island & Pacific Railroad Co.*, the plaintiff died when his car collided with a freight train. *See* 378 F.2d at 882. The plaintiff's estate sued the railroad company and joined a non-diverse alleged employee as a defendant. *See* 378 F.2d at 882. It was undisputed in *Smoot v. Chicago, Rock Island & Pacific Railroad Co.*, that the diversity-destroying party's employment with the railroad company had "terminated almost fifteen months before the collision and that he was in no way connected with the acts of negligence ascribed to him." 378 F.2d at 881. Thus, the court concluded that it could be proven with complete certainty that the diversity-destroying party was not liable to the plaintiff. *See* 378 F.2d at 882.

In recent unpublished decisions, the Tenth Circuit has adopted two different articulations of the burden of proof for fraudulent joinder, both from the United States Court of Appeals for the Fifth Circuit. *See Zufelt v. Isuzu Motors America, L.C.C.*, 727 F. Supp. 2d at 1124 (Browning, J.). In *Montano v. Allstate Indemnity*, the Tenth Circuit quoted favorably from *Hart v. Bayer Corporation*, 199 F.3d 239 (5th Cir. 2000):

> To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is no possibility that [the plaintiff] would be able to establish a cause of action against [the joined party] in state court. In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party. We are then to determine whether that party has any possibility of recovering against the party whose joinder is questioned.

*Montano v. Allstate Indem.*, No. 99-2225, 2000 WL 525592, at *4-5 (10th Cir. Apr. 14, 2000)(quoting *Hart v. Bayer Corp.*, 199 F.3d at 246) (quotations omitted; brackets in original). *See also Zufelt v. Isuzu Motors Am., L.C.C.*, 727 F. Supp. 2d at 1124 (Browning, J.). The Tenth Circuit stated that the standard for proving fraudulent joinder "is more exacting than that for dismissing a claim under Federal Rule of Civil Procedure 12(b)(6); indeed, the latter entails the

- 28 -

kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action commenced." *Montano v. Allstate Indem.*, 2000 WL 525592, at *2. The court in *Montano v. Allstate Indemnity* also quoted from *Batoff v. State Farm Insurance Co.*, 977 F.2d 848 (3d Cir. 1992), in which the United States Court of Appeals for the Third Circuit stated:   "A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction."   977 F.2d at 853.

In *Nerad v. AstraZeneca Pharmaceuticals, Inc.*, the Tenth Circuit adopted a different articulation of the burden of proof.   *See Zufelt v. Isuzu Motors America, L.C.C.*, 727 F. Supp. 2d at 1124 (Browning, J.).   The Tenth Circuit stated that, where fraudulent joinder is claimed, "the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant."   *Nerad v. AstraZeneca Pharms., Inc.*, 2006 WL 2879057, at *2 (citing *Badon v. R.J.R. Nabisco, Inc.*, 224 F.3d 382, 393 (5th Cir. 2000)).   *See also Zufelt v. Isuzu Motors America, L.C.C.*, 727 F. Supp. 2d at 1124 (Browning, J.).   The Tenth Circuit explained that "[a] 'reasonable basis' means just that:   the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law."   *Nerad v. AstraZeneca Pharms., Inc.*, 2006 WL 2879057, at *2.

The Fifth Circuit recognized the inconsistencies in the standard for fraudulent joinder and directly addressed the problem in *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003):

> Neither our circuit nor other circuits have been clear in describing the fraudulent joinder standard.   The test has been stated by this court in various terms, even within the same opinion.   For example, the *Griggs* [*v. State Farm Lloyds*, 181 F.3d 694 (5th Cir. 1999)] opinion states, "To establish that a non-diverse defendant has been fraudulently joined to defeat diversity, the removing party must prove . . . that there is absolutely no possibility that the plaintiff will be able to establish a cause of

action against the non-diverse defendant in state court."   181 F.3d at 699 [citations omitted].   The *Griggs* opinion later restates that test as follows -- "Stated differently, we must determine whether there is any reasonable basis for predicting that [the plaintiff] might be able to establish [the non-diverse defendant's] liability on the pleaded claims in state court."   181 F.3d at 699 [citations omitted]. Similarly, in summing up federal law, *Moore's Federal Practice* states at one point:   "To establish fraudulent joinder, a party must demonstrate . . . the *absence of any possibility* that the opposing party has stated a claim under state law." 16 *Moore's Federal Practice* § 107.14[2][c] [iv][A] (emphasis added).   It then comments:   "The ultimate question is whether there is arguably a *reasonable basis* for predicting that state law might impose liability on the facts involved."   *Id.* (emphasis added).   Although these tests appear dissimilar, "absolutely no possibility" vs. "reasonable basis," we must assume that they are meant to be equivalent because each is presented as a restatement of the other.

326 F.3d at 647 (emphasis in original).   *See Zufelt v. Isuzu Motors Am., L.C.C.*, 727 F. Supp. 2d at

1124 (Browning, J.).   The Fifth Circuit has settled upon the phrasing that

the test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

*Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) ("To reduce possible

confusion, we adopt this phrasing of the required proof and reject all others, whether the others

appear to describe the same standard or not."), *cert. denied*, 544 U.S. 992 (2005).   *See Zufelt v.*

*Isuzu Motors Am., L.C.C.*, 727 F. Supp. 2d at 1124 (Browning, J.).

In *Zufelt v. Isuzu Motors Am., L.C.C.*, the Court addressed the standard that courts in the

Tenth Circuit should apply when addressing fraudulent joinder.   The Court found that, to

establish that a party was fraudulently joined, a defendant has the burden of demonstrating that

"there is no possibility that the plaintiff would be able to establish a cause of action" against the

party alleged to be fraudulently joined.   *Zufelt v. Isuzu Motors Am., L.C.C.*, 727 F. Supp. 2d at

1124-25 (Browning, J.)(citing *Montano v. Allstate Indem.*, 2000 WL 525592, at *4-5); *Bio-Tec Environmental, LLC v. Adams*, 792 F. Supp. 2d 1208, 1216 (D.N.M. 2011)).

The party asserting fraudulent joinder bears the burden of proof. *See Montano v. Allstate Indem.*, 2000 WL 525592, at *1 ("The case law places a heavy burden on the party asserting fraudulent joinder."). To justify removal based on diversity jurisdiction, a defendant must plead a claim of fraudulent joinder with particularity and prove the claim with certainty. *See McLeod v. Cities Serv. Gas Co.*, 233 F.2d 242, 246 (10th Cir. 1956)("[F]raudulent joinder must be pleaded with particularity and proven with certainty.")(citation omitted). *Accord Couch v. Astec Indus., Inc.*, 71 F. Supp. 2d 1145, 1146-47 (D.N.M. 1999). "'In evaluating fraudulent joinder claims, [a court] must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party.'" *Montano v. Allstate Indem.*, 2000 WL 525592, at *1 (quoting *Hart v. Bayer Corp.*, 199 F.3d at 246)(additional citations omitted).

## RELEVANT LAW REGARDING REMAND

If a defendant has removed a matter to federal court, the plaintiff may object to the removal by filing a motion to remand the case to state court. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 69 (1996). A defect in the removal procedure is one of the grounds for remand that 28 U.S.C. § 1447(c) specifies. *See Moreno v. Taos County Bd. of Comm'rs*, 778 F. Supp. 2d 1139, 1141 (D.N.M. 2001); *McShares, Inc. v. Barry*, 979 F. Supp. 1338, 1341 (D. Kan. 1997)(citation omitted). Specifically, § 1447(c) provides that "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c). Lack of subject-matter jurisdiction is a second ground for remand specified in § 1447(c). Section 1447(c) provides that,

"[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."   28 U.S.C. § 1447(c).

An order to remand by a district court based on a finding of fraudulent joinder is not reviewable by the Tenth Circuit.  *See Nerad v. AstraZeneca Pharms., Inc.*, 2006 WL 2879057, at *2  ("[W]hen "a district court's remand is based on a timely raised defect in removal procedure or on a lack of subject-matter jurisdiction -- the grounds of remand recognized by § 1447(c) -- a court of appeals lacks jurisdiction to entertain an appeal of the remand order under § 1447(d)."). *See also Archuleta v. Taos Living Center, LLC*, 791 F. Supp. 2d 1066, 1073 (D.N.M. 2011)(Browning, J.)("An order to remand by a district court based on a finding of fraudulent joinder is not reviewable by the Tenth Circuit.").   The fraudulent-joinder inquiry on a motion to remand is a subject-matter jurisdiction inquiry.  *See Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1247 (10th Cir. 2004).

## RELEVANT LAW REGARDING RULE 6(A)

Rule 6(a) sets forth rules which are applicable in "computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time."   Fed. R. Civ. P. 6(a).   Rule 6(a) provides that when a prescribed period of time is stated in days, the period of time should be computed by

> exclud[ing] the day of the event that triggers the period, . . . count[ing] every day, including intermediate Saturdays, Sundays, and legal holidays; and . . . includ[ing] the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

Fed. R. Civ. P. 6(a)(1).

The Court has applied rule 6(a) to the removal statute set forth in 28 U.S.C. § 1446(b).   In

*Nieto v. University of New Mexico*, 727 F. Supp. 2d 1176 (D.N.M.)(Browning, J.), the plaintiff

objected to the timeliness of the University of New Mexico's notice of removal.   *See* 727 F. Supp.

2d at 1192 n.15.   The Court explained that the notice of removal was timely and fell within the

thirty-day time period set forth in § 1446(b).   *See* 727 F. Supp. 2d at 1192 n.15.     The Court

stated:

> UNM filed its notice of removal within 30 days of the date on which [the plaintiff]
> served UNM.   [The plaintiff] served UNM on April 11, 2008.   Thirty days from
> April 11, 2008 was May 11, 2008.     May 11, however, was a Sunday.
> Under 6(a)(1)(C) of the Federal Rules of Civil Procedure, which the Court applies
> when "computing any time period specified in . . . any statute that does not specify
> a method of computing time," the deadline was extended to "the end of the next day
> that is not a Saturday, Sunday, or legal holiday."   The next day that was not a
> Saturday, Sunday, or legal holiday was Monday, May 12, 2008 -- the day UNM
> filed its notice of removal.   The notice of removal was therefore timely.

727 F. Supp. 2d at 1192 n.15 (citing Fed. R. Civ. P. 6(a)).   Authority from other jurisdictions also

holds that rule 6(a) applies to the time period set forth in § 1446(b).   *See, e.g.*,   *Wells v. Gateways*

*Hosp. & Mental Health Ctr.*, No. 95-55915, 1996 WL 36184, *1 (9th Cir. Jan 30, 1996) (using rule

6(a) to extend removal filing deadline from thirtieth day, which landed on a Sunday, to the

following Monday); *Schneider v. Regions Bank*, No. 12-CV-0574-MJR-SCW, 2012 WL 3646270,

at *1 n.1 (S.D. Ill. Aug. 23, 2012)(explaining that "28 U.S.C. Section 1446(b)(1) requires removal

within thirty days after defendant receives formal service of the complaint," and holding that,

because "the 30th day fell on the weekend, . . . Regions got the benefit of Federal Rule of Civil

Procedure 6(a)(1)(C), and removal was timely on Monday, April 30, 2012")(internal citation

omitted); *Turner v. Nat'l Response Corp.*, No.1:12-CV-64, 2012 WL 3990929, at *3 (E.D. Tex.

Aug. 17, 2012)(holding that notice of removal was timely although the plaintiff filed the notice of

removal on Monday, March 12, even though the thirty-day deadline fell on Sunday, March 11,

because "[the removal statute] does not specify a method of computing time, [and] Federal Rule of Civil Procedure 6(a) applies to set the applicable deadline for the following Monday, March 12"); *Loftin v. South Carolina Dep't of Pub. Safety*, No. 6:12-CV-863-GRA-JDA, 2012 WL 2675324, at *3 (D.S.C. May 24, 2012)(holding that although the thirty-day deadline set forth in 28 U.S.C. § 1446(b)(1) fell on Saturday, March 24, 2012, the defendants had until Monday, March 26, 2012, to file their notice of removal, because "[p]ursuant to Federal Rule of Civil Procedure 6(a)(1)(C), when calculating time, the last day of the period must be included," "but if the last day is a Saturday . . . the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday")(quoting Fed. R. Civ. P. 6(a)(1)(C)); *Bermudez v. Wal-Mart Stores Tex., LLC*, No. C-10-127, 2010 WL 2486868, at *4 n.3 (S.D. Tex. June 16, 2010)(explaining that rule 6(a) applies to "any applicable statute," and that "numerous courts have applied Rule 6(a) to determine the proper deadline for removal under 28 U.S.C. § 1446(b)," and holding that the notice of removal was timely even though the thirtieth day fell on Saturday, January 16, 2010, because rule 6(a) extended a weekend deadline to Monday, January 18, 2010); *Despres v. Ampco-Pittsburgh Corp.*, 577 F. Supp. 2d 604, 609 (D. Conn. 2008)("The thirtieth day after [the complaint was filed] was September 8," but, "because September 8 was a Saturday, according to the rules for computing time set out on Federal Rule of Civil Procedure 6(a)(3), the period for removal was extended until the next regular weekday," which was Monday, September 10, the date the defendant filed the notice of removal); *Medina v. Wal-Mart Stores, Inc.*, 945 F. Supp. 519, 521 (W.D.N.Y. 1996) (holding that the thirtieth day after service fell on a Saturday and that pursuant to rule 6(a) the last day the defendant could file a notice of removal under § 1446(b) became the following Monday).

The 2009 Advisory Committee's notes to rule 6(a) explain that the time computation provisions of subdivision (a) do not apply "when computing a time period set by a statute if the statute specifies a method of computing time."   Fed. R. Civ. P. 6(a) advisory committee's note (citing 2 U.S.C. § 394).   The Advisory Committee's notes refer to 2 U.S.C. § 394 as an example of a statute that specifies a method of computing time.   *See* Fed. R. Civ. P. 6(a) advisory committee's note.   Section 394 provides:

> In computing any period of time prescribed or allowed by this chapter [dealing with contested elections to the House of Representatives] or by the rules or any order of the committee, the day of the act, event, or default after which the designated period of time begins to run shall not be included.   The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period shall run until the end of the next day which is neither a Saturday, a Sunday, nor a legal holiday.   When the period of time prescribed or allowed is less than seven days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation.   For the purposes of this chapter, "legal holiday" shall mean New Year's Day, Washington's Birthday, Memorial Day, Independence Day, Labor Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day appointed as a holiday by the President or the Congress of the United States.

2 U.S.C. §394.

The Advisory Committee's notes further indicate that the time computation rules do not apply when a fixed time is set.   *See* Fed. R. Civ. P. 6(a) advisory committee's note.   If, for example, the date for filing is "'no later than November 1, 2007,' subdivision (a) does not govern." *See* Fed. R. Civ. P. 6(a) advisory committee's note.   "But if a filing is required to be made 'within 10 days' or 'within 72 hours,' subdivision (a) describes how that deadline is computed."   *See* Fed. R. Civ. P. 6(a) advisory committee's note.

## RELEVANT LAW REGARDING THE
## EXCLUSIVITY PROVISIONS IN THE NMWCA

The NMWCA, N.M. Stat. Ann. §§ 52-5-1 to 52-5-22, "provides the exclusive remedy

against employers for employees injured on the job," *Vigil v. Digital Equip. Corp.*, 122 N.M. 417, 418, 925 P.2d 883, 884 (Ct. App. 1996).   *See Hamburg v. Sandia Corp.*, 143 N.M. 601, 603, 179 P.3d 1209, 1211 (2008)(explaining that the NMWCA's exclusivity provisions shield from tort liability employers who comply with the NMWCA)(citation omitted), provided the employer complies with the NMWCA's preconditions, *see Rivera v. Sagebrush Sales, Inc.*, 118 N.M. 676, 677-78, 884 P.2d 832, 833-34 (Ct. App.), *cert. denied*, 118 N.M. 585, 883 P.2d 1282 (1994).   The NMWCA provides:

> The right to the compensation provided for in this act, in lieu of any other liability whatsoever, to any and all persons whomsoever, for any personal injury accidentally sustained or death resulting therefrom, shall obtain in all cases where the following conditions occur:
>
> A.  at the time of the accident, the employer has complied with the provisions thereof regarding insurance;
>
> B.  at the time of the accident, the employee is performing service arising out of and in the course of his employment; and
>
> C.  the injury or death is proximately caused by accident arising out of and in the course of his employment and is not intentionally self-inflicted.

N.M. Stat. Ann. § 52-1-9.   The NMWCA further indicates that

> [i]t provides exclusive remedies.   No cause of action outside the Workers' Compensation Act shall be brought by an employee or dependent against the employer or his representative, including the insurer, guarantor or surety of any employer, for any matter relating to the occurrence of or payment for any injury or death covered by the Workers' Compensation Act.   Nothing in the Workers' Compensation Act, however, shall affect or be construed to affect, in any way, the existence of or the mode of trial of any claim or cause of action that the worker has against any person other than his employer or another employee of his employer, including a management or supervisory employee, or the insurer, guarantor or surety of his employer.

N.M. Stat. Ann. § 52-1-6(E).   The foregoing exclusivity provisions also provide employees of an employer that the NMWCA covers with immunity from suit in tort by co-employees.   *See Street v.*

- 36 -

*Alpha Constr. Servs.*, 140 N.M. 425, 426-27, 143 P.3d 187, 188-89 (2006)(citing N.M. Stat. Ann. §§ 52-1-6(E); *id.* § 52-1-8)(additional citation omitted); *Matkins v. Zero Refrigerated Lines, Inc.*, 93 N.M. 511, 517, 602 P.2d 195, 201 (Ct. App. 1979) ("[A]n employee of an employer who has complied with the requirements of the Act is not subject to liability under the common law for the injury or death of a coemployee.").

One of the NMWCA's preconditions is that, at the time of the accident, the "employer has complied with the provisions thereof regarding insurance."  N.M. Stat. Ann. § 52-1-9(A).  *See Peterson v. Wells Fargo Armored Servs. Corp.*, 129 N.M. 158, 161, 3 P.3d 135, 138 (Ct. App. 2000)("In order to take advantage of the exclusive remedy provisions of the Act, an employer must comply with the provisions of the Act concerning insurance.")(citing N.M. Stat. Ann. §§ 52-1-6(C) & (D); *id.* § 52-1-8; *id.* § 52-1-9).  "If the employer fails to comply with those provisions, the worker can sue the employer either for compensation benefits or for damages in tort caused by the employer's negligence."  *Peterson v. Wells Fargo Armored Servs. Corp.*, 129 N.M. at 161, 3 P.3d at 138 (citing *Harger v. Structural Servs., Inc.*, 121 N.M. 657, 666, 916 P.2d 1324, 1333 (1996)).

The exclusivity of compensation under the NMWCA also rests on the existence of the employment relationship.  *See Street v. Alpha Constr. Servs.*, 140 N.M. 425, 426, 143 P.3d 187, 188 (Ct. App. 2006)(citation omitted); *Rivera v. Sagebrush Sales, Inc.*, 118 N.M. 676, 680, 884 P.2d 832, 836 (Ct. App. 1994).  A worker has an employment relationship with a putative employer if the worker "was a direct employee, a statutory employee, or a special employee.   In contrast, if [the worker] was an independent contractor, he would not have an employment relationship with [an alleged employer]."  *Hamburg v. Sandia Corp.*, 143 N.M. at 603, 179 P.3d

at 1211.   *See also Rivera v. Sagebrush Sales, Inc.*, 118 N.M. at 678-79, 884 P.2d at 834-35.

A defendant may be a "special employer" entitled to protection under the exclusivity provisions if three conditions are satisfied:   "(1) the employee has made a contract of hire, express or implied, with the special employer; (2) the work being done is essentially that of the special employer; and (3) the special employer has the right to control the details of the work."   *Rivera v. Sagebrush Sales, Inc.*, 118 N.M. at 678-79, 884 P.2d at 834-35 (citations omitted).   The Court of Appeals of New Mexico has held that, with respect to the first element of the special employer test, i.e., "whether the employee has made a contract of hire with the special employer, the employee must have consented to the employment relationship."   *Rivera v. Sagebrush Sales, Inc.*, 118 N.M. at 679, 884 P.2d at 835 (citing 1C A. Larson, *Workmen's Compensation Law* § 48.12 at 8-409 (2005)(noting that the employee's informed consent to a contract of hire is required, because the employee gives up rights when he or she enters into a new employment relationship, specifically the right to sue the employer at common law for negligence, and therefore it is necessary to show deliberate, informed consent to establish the existence of the new relationship)); 1C Larson, *supra* § 48.12, at 8-409 (citing *Antheunisse v. Tiffany & Co.*, 551 A.2d 1006, 1008 (N.J. App. Div. 1988)(holding that worker impliedly contracted to the employment relationship where the worker knew she would be hired out to various temporary employers, voluntarily reported to work, and followed the special employer's instructions), *cert. denied*, 556 A.2d 1206 (N.J. 1989); *Santa Cruz Poultry, Inc. v. Superior Ct.*, 239 Cal. Rptr. 578, 580, 582-83 (Cal. 1987)(holding that the worker made a contract of hire with the employer, because the employer's control over worker's job performance implies, as a matter of law, the employment relationship between them); *English v. Lehigh County Auth.*, 428 A.2d 1343, 1353-54 (Pa. 1981)(holding that the worker made a contract

of hire, because the worker's submitting himself to the control and supervision of the special employer demonstrates consent to employment); *Wright v. Habco, Inc.*, 419 S.W.2d 34, 36 (Mo. 1967)(holding that the worker consented to work for the special employers, and thus that a contract for hire existed, because the worker entered into employment relationship with a labor broker and worked under the special employer's supervision for several weeks before the accidental injury)).

In *Vigil v. Digital Equipment Corporation*, 122 N.M. 417, 925 P.2d 883 (Ct. App.), *cert. denied*, 122 N.M. 279, 923 P.2d 1164 (1996), the Court of Appeals of New Mexico concluded that the employment relationship between a corporation and the temporary worker whom an employment agency hired and lent to the corporation met the requirements for a finding of special employment, rendering the temporary worker's remedy for injuries sustained at the corporate work site limited to the NMWCA.  *See* 122 N.M .at 420, 925 P.2d at 886.  The Court of Appeals of New Mexico held that the worker impliedly consented to the employment relationship.  *See* 122 N.M. at 420-21, 925 P.2d at 886-87.  The Court of Appeals of New Mexico explained that the plaintiff consented to work for the corporation and a contract could be implied, because the worker "reported for work at [the corporation] and submitted to the supervision of [the corporation] for eight months prior to the accident, [the plaintiff] was paid according to the work he did for [the corporation], and [the corporation] had the power to terminate [the plaintiff's] temporary employment at [the corporation]" if the plaintiff's work was unsatisfactory.  122 N.M. at 420-21, 925 P.2d at 886-87.

In *Castillo v. McCarthy Building. Cos.*, 2013 WL 4515751 (Ct. App. Apr. 11, 2013), the Court of Appeals of New Mexico again addressed the question of implied consent to an employment relationship in the context of a special employment claim under the NMWCA.  In

*Castillo v. McCarthy Building Cos.*, the defendant was the general contractor on a hotel construction project, and the plaintiff -- an employee of the defendant's drywall subcontractor who had been assigned to work at the defendant's site with a clean-up composite crew on the day of the accident -- was injured when he fell several stories at the defendant's job site. *See* 2013 WL 4515751, at *1. The Court of Appeals of New Mexico concluded that the plaintiff accepted an assignment to work for the defendant, because it was undisputed that the plaintiff was assigned to the composite crew the day of the accident, that the plaintiff was aware that the defendant operated the composite crew, and that the plaintiff worked for the composite crew at least part of the day. *See* 2013 WL 4515751, at *3. The Court of Appeals of New Mexico held: "Therefore, Plaintiff's acceptance of this assignment is sufficient to establish as a matter of law an implied contract for hire between Plaintiff and Defendant for the purpose of the special employer test." 2013 WL 4515751, at *3.

While employees of an employer covered by the NMWCA are also immune from suit in tort by co-employees under the NMWCA's exclusivity provisions, *see Street v. Alpha Constr. Servs.*, 140 N.M. at 426-27, 143 P.3d at 188-89 (citations omitted), immunity is not extended to co-special employees of a shared special employer. In *Street v. Alpha Construction Services*, the Court of Appeals of New Mexico distinguished special co-employees from co-employees and held that special co-employees are not immune from liability. *See* 140 N.M. at 428, 143 P.3d at 190. In *Street v. Alpha Construction Services*, the plaintiff was the direct employee of Technadyne Engineering Consultants, but a special employee of Sandia Corporation pursuant to a contract between Technadyne Engineering and Sandia Corporation under which the plaintiff provided administrative support services at Sandia Corporation. *See* 140 N.M. at 425, 143 P.3d at 187.

The defendant Alpha Construction Services was a roofing company that provided employees to Sandia Corporation to undertake roofing repairs through a contract between Alpha Construction and Sandia Corporation.   *See* 140 N.M. at 425-26, 143 P.3d at 187-88.   The plaintiff sued Alpha Construction for injuries the plaintiff allegedly sustained because of Alpha Construction's roofing activities.   *See* 140 N.M. at 426, 143 P.3d at 188.   If the plaintiff, who was a special employee of Sandia Corporation, had sued one of Sandia Corporation's direct employees, the direct employee would have been entitled to immunity under the NMWCA, provided the plaintiff could establish that the NMWCA covered Sandia Corporation.   *See* 140 N.M. at 430, 143 P.3d at 192 (Kennedy, J., dissenting).   Because, however, the plaintiff sued another special employee of Sandia Corporation, and this other special employee had a different direct employer from the plaintiff's direct employer and worked for Sandia Corporation under a different contract from the plaintiff's contract, the NMWCA did not cover the defendant special employee.   *Street v. Alpha Constr. Servs.*, 140 N.M. at 428, 143 P.3d at 190.

In so holding, the Court of Appeals of New Mexico reasoned that special co-employees were not entitled to immunity, because the "*quid pro quo* for the protection afforded to the workers" was missing and therefore could not provide the basis for any immunity the NMWCA grants.   *See Street v. Alpha Constr. Servs.*, 140 N.M. at 427, 143 P.3d at 189.   The Court of Appeals of New Mexico explained:

> "The reason for the employer's immunity is the *quid pro quo* by which the employer gives up its normal defenses and assumes automatic liability, while the employee gives up his or her right to common-law verdicts.   This reasoning can be extended to the tortfeasor coemployee, who also is involved in this compromise of rights.   Perhaps, so the argument goes, one of the things the coemployee is entitled to expect in return for what he or she has given up is freedom from common-law suits based on industrial accidents in which that coemployee is at fault."

140 N.M. at 427, 143 P.3d at 189 (quoting 6 Larson, *supra* § 111.03[2], at 111-12).   In the case of a co-special employee, however, the quid pro quo is not present.   Thus, while "[a] special employer has a workers' compensation liability to the direct employer's employees, and therefore receives the *quid pro quo* of immunity from suit," "direct employers -- such as Alpha Construction and Technadyne Engineering here -- have no comparable liability to each other's employees, or to the employees of other subcontractors, and therefore are not entitled to the *quid pro quo* of immunity from suit."   140 N.M. at 428, 143 P.3d at 190.   Thus, the Court of Appeals of New Mexico held that "the subcontractor or direct employer, in this case Alpha Construction, who neither provided nor was required to provide insurance protections for employees of Technadyne Engineering, is not entitled to immunity from suit under the exclusivity provisions of the Act," because "Alpha and Plaintiff are not co-employees for purposes of the Act."   140 N.M. at 428, 143 P.3d at 190.   Because the NMWCA's immunity provisions did not cover the direct employer Alpha Construction from the plaintiff's claims, so too Alpha Construction's employees were not shielded from the plaintiff's claims.   *Cf.* 140 N.M. at 426-27, 143 P.3d at 188-89 (employees of an employer covered by the NMWCA are also immune under the NMWCA's exclusivity provisions from suit in tort by co-employees)(citations omitted).

**RELEVANT LAW REGARDING THE
WILLFUL CONDUCT EXCEPTION TO THE
EXCLUSIVITY OF THE NMWCA**

When a worker suffers an accidental injury and the NMWCA's necessary preconditions are satisfied, the NMWCA "provides a scheme of compensation that affords profound benefits to both workers and employers.   The injured worker receives compensation quickly, without having to endure the rigors of litigation or prove fault on behalf of the employer."   *Delgado v. Phelps*

- 42 -

*Dodge Chino, Inc.*, 131 N.M. 272, 274, 34 P.3d 1148, 1150 (2001)(citing *Sanchez v. M.M. Sundt Constr. Co.*, 103 N.M. 294, 296-97, 706 P.2d 158, 160-61 (Ct. App. 1985)("The Act, in effect, is designed to supplant the uncertainties of tort remedies and the burden of establishing an employer's negligence with a system of expeditious and scheduled payments of lost wages based on accidental injury or death in the course and scope of employment.")).   "The employer, in exchange, is assured that a worker accidentally injured, even by the employer's own negligence, will be limited to compensation under the Act and may not pursue the unpredictable damages available outside its boundaries."  *Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. at 274, 34 P.3d at 1150 (citing N.M. Stat. Ann. § 52-1-9).   The NMWCA represents the "result of a bargain struck between employers and employees.   In return for the loss of a common law tort claim for accidents arising out of the scope of employment, [the NMWCA] ensures that workers are provided some compensation."  *Coates v. Wal-Mart Stores, Inc.*, 127 N.M. 47, 52, 976 P.2d 999, 1004 (1999)(citation omitted).  *See also Kent Nowlin Constr. Co. v. Gutierrez*, 99 N.M. 389, 390, 658 P.2d 1116, 1117 (1982) (describing exclusivity as striking "a balance between the worker's need for expeditious payment and the employer's need to limit liability").

In *Delgado v. Phelps Dodge Chino, Inc.*, the Supreme Court of New Mexico discussed the circumstances under which the NMWCA's exclusivity protections do not apply.   *See* 131 N.M. at 277, 34 P.3d at 1153.   "The Legislature clearly intended to extend employers' privilege of immunity from tort liability, like the worker's privilege of expedited compensation, only to injuries accidentally sustained."  *Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. at 277, 34 P.3d at 1153.   While the Legislature explicitly provided in § 52-1-9(C) that exclusivity applies only when "'the injury or death is proximately caused by an accident arising out of and in the course of

his [or her] employment[,]' . . . the Act contains no such provision with regard to employer misconduct." *Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. at 277, 34 P.3d at 1153. The Supreme Court of New Mexico explained that, to determine "when employer misconduct should deprive the employer of exclusivity, our courts have, until now, uniformly [applied the] 'actual intent' test for determining whether employer misconduct renders a worker's injury compensable outside the Act." *Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. at 277, 34 P.3d at 1153 (citations omitted). "Under this test, 'in order to allege matters which will render an employer liable in tort outside the [NMWCA], the plaintiff must allege matters indicating that the employer intended to injure the plaintiff.'" *Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. at 277, 34 P.3d at 1153 (quoting *Johnson Controls World Servs. Inc. v. Barnes*, 115 N.M. 116, 119, 847 P.2d 761, 764 (Ct. App. 1993)).

In *Delgado v. Phelps Dodge Chino, Inc.*, the Supreme Court of New Mexico overruled the line of cases applying the actual intent test to determine whether the NMWCA's exclusivity provisions grant employers immunity from suit, because the Supreme Court of New Mexico concluded "that the actual intent test favors employers." 131 N.M. at 278, 34 P.3d at 1154. The Supreme Court of New Mexico explained that, under the actual intent test, a court

> ignore[s] the "degree of gravity or depravity of the employer's conduct' unless it was comparable to 'a left jab to the chin,' because only then will it be 'non-accidental.' When determining whether to deprive a worker of compensation, however, we consider the depravity of the worker's conduct, and withhold compensation when that conduct reaches a far lower level of intent than that attending a 'left jab to the chin.'

131 N.M. at 279, 34 P.3d at 1155 (quoting 6 Larson, *supra* § 103.03, at 103-9). The Supreme Court of New Mexico explained that, "[u]nder the actual intent test, a single standard of culpability, namely willfulness, will prevent a worker from benefitting from the Act while

- 44 -

preserving the corresponding benefits for the employer," and concluded that "[t]his bias violates the explicit mandate of Section 52-5-1, which demands the equal treatment of workers and employers."   131 N.M. at 279, 34 P.3d at 1155.

The Supreme Court of New Mexico also reevaluated, and ultimately abandoned, the actual intent test, because the test "provides immunity from tort liability for all injuries inflicted by the employer except those rare, practically unprovable instances in which it is the employer's purpose to injure the worker," and allows "an employer who knows his acts will cause certain harm or death to an employee [to] escape personal responsibility for an act by merely claiming that he/she hoped the employee would make it."   *Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. at 278, 34 P.3d at 1154.

> Even more disturbingly, the actual intent test encourages an employer, motivated by economic gain, to knowingly subject a worker to injury in the name of profit-making.   As long as the employer is motivated by greed, rather than intent to injure the worker, the employer may abuse workers in an unlimited variety of manners while still enjoying immunity from tort liability.

*Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. at 278, 34 P.3d at 1154.

Finally, the Supreme Court of New Mexico noted that, in the past, it had applied a standard inconsistent with the actual intent test, thus implicitly rejecting the test.   In *Coates v. Wal-Mart Stores, Inc.*, 127 N.M. 47, 976 P.2d 1005 (1999), the Supreme Court of New Mexico held that the NMWCA's exclusivity provisions did not bar the plaintiff's tort claims based on sexual harassment, because Wal-Mart's supervisors acted intentionally.   *See* 127 N.M. at 53, 976 P.2d at 1005.   The Supreme Court of New Mexico attributed intent to Wal-Mart, despite the absence of any proof that Wal-Mart actually intended to injure the plaintiff, because Wal-Mart knew that one of its supervisors was sexually harassing the plaintiff but failed to take action to stop the

harassment.   *See* 127 N.M. at 54, 976 P.2d at 1006.

For these reasons, the Supreme Court of New Mexico "expressly overrule[d] all case law that has required allegation or proof of an employer's actual intent to injure a worker as a precondition to a worker's tort recovery."   *Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. at 279, 34 P.3d at 1155.   Instead, the Supreme Court of New Mexico held that, "[i]n keeping with Section 52-5-1, . . . the same standard of conduct that our Legislature deemed non-accidental for purposes of depriving a worker of compensation must determine whether an employer's misconduct renders an injury non-accidental for purposes of exclusivity."   *Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. at 279, 34 P.3d at 1155.   "[W]hen an employer intentionally inflicts or willfully causes a worker to suffer an injury that would otherwise be exclusively compensable under the Act, that employer may not enjoy the benefits of exclusivity, and the injured worker may sue in tort."   *Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. at 279-80, 34 P.3d at 1155-56.   Willfulness renders a worker's injury non-accidental, and therefore outside the scope of the NMWCA, when:

> (1) the worker or employer engages in an intentional act or omission, without just cause or excuse, that is reasonably expected to result in the injury suffered by the worker; (2) the worker or employer expects the intentional act or omission to result in the injury, or has utterly disregarded the consequences; and (3) the intentional act or omission proximately causes the injury.

*Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. at 280, 34 P.3d at 1156.

Under this test's first objective prong, a court determines "whether a reasonable person would expect the injury suffered by the worker to flow from the intentional act or omission." *Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. at 280, 34 P.3d at 1156.   Under the second subjective prong, a court examines the worker's or employer's subjective state of mind:

If the worker or employer decided to engage in the act or omission without ever considering its consequences, this prong is satisfied.  If, on the other hand, the worker or employer did consider the consequences of the act or omission, this prong will be satisfied only when the worker or employer expected the injury to occur.

*Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. at 280, 34 P.3d at 1156.   Under the third prong, a court must determine that the willfulness was a proximate cause of the injury.  *See Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. at 280, 34 P.3d at 1156 (citations omitted).

## ANALYSIS

Hernandez requests, under 28 U.S.C. § 1447, that the Court remand, because of several defects in the removal procedure, and, because the Court lacks jurisdiction over the case.  In support of his request, Hernandez first argues that Menlo Logistics' Notice of Removal, and Hewlett-Packard's and Taurus Southern's consents to removal, were untimely, because the thirty-day deadline for removal set forth in 28 U.S.C. § 1446(b) expired on Sunday, August, 26, 2012.  The Court does not agree.  Rule 6(a), which governs the computation of time periods in statutes that do not contain a method for computing time, *see* Fed. R. Civ. P. 6(a)(1), applies to § 1446(b) and computes the expiration of time periods ending on a weekend to fall on the next day that is not a weekend or holiday.   The Court concludes that the thirty-day time limitation set forth in § 1446(b) is a deadline, and is not, as Hernandez argues, a "method of computing time" that renders rule 6(a) inapplicable.   Accordingly, under rule 6(a), the thirty-day deadline for removal set forth in § 1446(b) fell on Sunday, August 26, 2012, but was computed pursuant to rule 6(a) to fall on Monday, August 27, 2012.   Thus, Menlo Logistics' Notice of Removal, and Hewlett-Packard's and Taurus Southern's accompanying consents to removal, were timely filed.

Hernandez next argues that Menlo Logistics' Notice of Removal did not comply with 28

U.S.C. § 1446(a), which requires that a notice of removal be filed together "with a copy of all process . . . served upon such defendant or defendants in such action.'"   Motion to Remand ¶ 26, at 10 (quoting 28 U.S.C. § 1446(a)).   Although Menlo Logistics failed to attach to the Notice of Removal the required summonses within the thirty-day deadline set forth in the removal statute, *see* Tr. at 18:21-25, 19:1-4 (Isaac), Menlo Logistics ultimately filed them, albeit within thirty days after filing the Notice of Removal, *see* Tr. at 19:5-7 (Isaac), and not within the 28-day period prescribed by D.N.M.LR-Civ. 81.1A.   The Court concludes, however, that Menlo Logistics' failure to attach the required summonses was a de minimis procedural defect, which was cured without prejudice to Hernandez or impairment to the Court, and that the procedural defect therefore does not merit remand.

The Court agrees with Hernandez' argument that Menlo Logistics and Hewlett-Packard have failed to meet their burden under the fraudulent joinder standard of demonstrating that there is no possibility that Hernandez would be able to establish a cause of action against Alvarez. Menlo Logistics and Hewlett-Packard argue that Hernandez' claims against Alvarez are barred, because Menlo and Hewlett-Packard were special employers of Hernandez and Alvarez, because Alvarez was Hernandez' co-employee, and because Alvarez therefore was immune from suit under the NMWCA's exclusivity provisions.   Hernandez contends that the Defendants have not presented any evidence that establishes that his claims against Alvarez are barred, because Alvarez was his co-employee.   Furthermore, Hernandez maintains that Menlo Logistics and Hewlett-Packard have not presented evidence that they complied with the NMWCA's provisions regarding insurance or that the exception to immunity set forth in *Delgado v. Phelps Dodge Chino, Inc.* does not apply.

The Court concludes that Menlo Logistics and Hewlett-Packard have failed to carry their burden of demonstrating that Hernandez has no possibility of establishing a claim against Alvarez. The Complaint's allegations are not sufficient to demonstrate either that Hernandez was Menlo Logistics' and Hewlett-Packard's special employee or that Alvarez was Hernandez' co-employee. Rather, there is a possibility that Alvarez was a special employee of Menlo Logistics and Hewlett-Packard working for a different direct employer than Hernandez' direct employer, or that Alvarez was an independent contractor; in either case, Alvarez would not be considered Hernandez' co-employee entitled to immunity under the NMWCA.   In addition, the Complaint's allegations do not establish that Menlo Logistics and Hewlett-Packard complied with the NMWCA's insurance provisions.   Finally, Menlo Logistics and Hewlett-Packard have not demonstrated that the Complaint's allegations could not possibly fall into the exception to the NMWCA's immunity provisions set forth in *Delgado v. Dodge Phelps Chino, Inc.*   Thus, because the Defendants have not demonstrated that the Complaint's allegations render Alvarez immune from Hernandez' claims or that Hernandez otherwise has no possibility of establishing a cause of action against Alvarez, the Court concludes that Menlo Logistics and Hewlett-Packard have failed to sustain their fraudulent joinder burden.

The Court denies Hernandez' request for jurisdictional discovery.   In the event the Court does not grant the Motion to Remand, Hernandez requests "that the Court permit jurisdictional discovery as to whether Defendant Menlo's removal was timely and whether there are defects in removal procedure and whether co-defendant Jose Alvarez is properly joined as a defendant in this case."   Motion to Remand ¶ 31, at 12.   Because the Court grants Hernandez' Motion to Remand on the ground that Menlo Logistics and Hewlett-Packard have failed to satisfy their burden of

demonstrating that Hernandez joined Alvarez for the purpose of defeating diversity jurisdiction, the Court denies Hernandez' motion in the alternative for jurisdictional discovery as moot.

The Court also denies Hernandez' conditional request to remand the Complaint on the ground that the Complaint constitutes a "'civil action . . . arising under the workmen's compensation laws of [New Mexico],'" and, as such, that 28 U.S.C. § 1445(c) precludes the removal of the Complaint to this Court.  Motion to Remand ¶ 33, at 13 (quoting 28 U.S.C. § 1445(c)).  Hernandez asks the Court conditionally -- i.e., in the event the Court concludes that Hernandez' exclusive remedy against Defendants Menlo Logistics and Hewlett-Packard for the injuries alleged in the Complaint is pursuant to the NMWCA -- to remand the case pursuant to § 1445(c).  Because the Court does not find that Hernandez' exclusive remedy is pursuant to the NMWCA, the Court concludes that Hernandez' conditional motion to remand is moot and therefore denies the motion.

## I.  THE NOTICE OF REMOVAL AND ACCOMPANYING CONSENTS TO REMOVAL WERE TIMELY FILED.

The Court concludes that rule 6(a), which governs the computation of time periods in statutes that specify no method of computing time, applies to removals under 28 U.S.C. § 1446(b). On this issue, Menlo Logistics argues that its removal is timely, because the thirtieth day fell on Sunday, August 26, 2012, and rule 6(a) should apply so that its thirtieth day should be construed to be Monday, August 27, 2012, which was the thirty-first day.  Hernandez argues that Menlo Logistics' Notice of Removal, and Hewlett-Packard's and Taurus Southern's consents to removal, were untimely, because § 1446(b) sets forth a method of computing time -- i.e., the thirty-day time period prescribed therein -- and rule 6(a) does not apply when a statute specifies a method of computing time.

- 50 -

The Court concludes that the thirty-day time period articulated in § 1446(b) is not a "method of computing time," Fed. R. Civ. P. 6(a), but rather is a time deadline, to which rule 6(a)'s method of computing time applies.   Thus, although the thirty-day deadline for removal set forth in § 1446(b) fell on Sunday, August 26, 2012, by virtue of rule 6(a) it was computed to fall on Monday, August 27, 2012.   Accordingly, Menlo Logistics' Notice of Removal, and Hewlett-Packard's and Taurus Southern's accompanying consents to removal, were not untimely filed.

The Court's holding is consistent with its prior holdings that apply rule 6(a) to the thirty-day deadline for removal set forth in 28 U.S.C. § 1446(b).   In *Nieto v. University of New Mexico*, the plaintiff objected to the timeliness of the University of New Mexico's notice of removal.   *See* 727 F. Supp. 2d at 1192 n.15 (Browning, J.).   The Court explained that the notice of removal was timely and fell within the thirty-day time period § 1446(b) prescribes.   *See* 727 F. Supp. 2d at 1192 n.15.   The Court stated:

> UNM filed its notice of removal within 30 days of the date on which [the plaintiff] served UNM.   [The plaintiff] served UNM on April 11, 2008.   Thirty days from April 11, 2008 was May 11, 2008.   May 11, however, was a Sunday.   Under rule 6(a)(1)(C) of the Federal Rules of Civil Procedure, which the Court applies when "computing any time period specified in . . . any statute that does not specify a method of computing time," the deadline was extended to "the end of the next day that is not a Saturday, Sunday, or legal holiday."   The next day that was not a Saturday, Sunday, or legal holiday was Monday, May 12, 2008 -- the day UNM filed its notice of removal.   The notice of removal was therefore timely.

727 F. Supp. 2d at 1192 n.15 (citing Fed. R. Civ. P. 6(a)).   Moreover, authority from other jurisdictions also holds that rule 6(a) applies to the time period set forth in § 1446(b).   *See, e.g.*, *Wells v. Gateways Hosp. & Mental Health Ctr.*, 1996 WL 36184, at *1 (using rule 6(a) to extend the removal filing deadline from thirtieth day, which landed on a Sunday, to the following

Monday); *Schneider v. Regions Bank*, 2012 WL 3646270, at *1 n.1 (explaining that "28 U.S.C. Section 1446(b)(1) requires removal within thirty days after defendant receives formal service of the complaint," and holding that, because "the 30th day fell on the weekend, . . . Regions got the benefit of Federal Rule of Civil Procedure 6(a)(1)(C), and removal was timely on Monday, April 30, 2012")(internal citation omitted); *Turner v. Nat'l Response Corp.*, 2012 WL 3990929, at *3 (holding that the notice of removal was timely although the plaintiff filed the notice of removal on Monday, March 12, even though the thirty-day deadline fell on Sunday, March 11, because "28 U.S.C. § 1447(c) does not specify a method of computing time, [and] Federal Rule of Civil Procedure 6(a) applies to set the applicable deadline for the following Monday, March 12"); *Loftin v. South Carolina Dep't of Public* Safety, 2012 WL 2675324, at *3 (holding that, although the thirty-day deadline set forth in 28 U.S.C. § 1446(b)(1) fell on Saturday, March 24, 2012, the defendants had until Monday, March 26, 2012, to file their notice of removal, because "[p]ursuant to Federal Rule of Civil Procedure 6(a)(1)(C), when calculating time, the last day of the period must be included," "but if the last day is a Saturday . . . the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday")(quoting Fed. R. Civ. P. 6(a)(1)(C)); *Bermudez v. Wal-Mart Stores Tex., LLC*, 2010 WL 2486868, at *4 n.3 (explaining that rule 6(a) applies to "any applicable statute," and that "numerous courts have applied Rule 6(a) to determine the proper deadline for removal under 28 U.S.C. § 1446(b)," and holding that the notice of removal was timely even though the thirtieth day fell on Saturday, January 16, 2010, because rule 6(a) extended a weekend deadline to Monday, January 18, 2010); *Despres v. Ampco-Pittsburgh Corp.*, 577 F. Supp. 2d at 609 (explaining that "[t]he thirtieth day after [the complaint was filed] was September 8," but, "because September 8 was a Saturday, according to

- 52 -

the rules for computing time set out on Federal Rule of Civil Procedure 6(a)(3), the period for

removal was extended until the next regular weekday," which was Monday, September 10, the

date the defendant filed the notice of removal); *Medina v. Wal-Mart Stores, Inc.*, 945 F. Supp. at

521 (holding that the thirtieth day after service fell on a Saturday, so pursuant to rule 6(a), the last

day that the defendant could file a notice of removal became the following Monday).

Furthermore, although the time computation provisions of rule 6(a) do not apply if a statute

specifies a method of computing time, the 2009 Advisory Committee's notes to rule 6(a) refers to

2 U.S.C. § 394 as an example of a statute that specifies a method of computing time.   *See* Fed. R.

Civ. P. 6(a) advisory committee's note (citing 2 U.S.C. § 394).   Section 394 provides:

> In computing any period of time prescribed or allowed by this chapter or by the
> rules or any order of the committee, the day of the act, event, or default after which
> the designated period of time begins to run shall not be included.   The last day of
> the period so computed shall be included, unless it is a Saturday, a Sunday, or a
> legal holiday, in which event the period shall run until the end of the next day which
> is neither a Saturday, a Sunday, nor a legal holiday.   When the period of time
> prescribed or allowed is less than seven days, intermediate Saturdays, Sundays, and
> legal holidays shall be excluded in the computation.   For the purposes of this
> chapter, "legal holiday" shall mean New Year's Day, Washington's Birthday,
> Memorial Day, Independence Day, Labor Day, Veterans Day, Thanksgiving Day,
> Christmas Day, and any other day appointed as a holiday by the President or the
> Congress of the United States.

2 U.S.C. § 394.

The provisions in § 394 establish a detailed method for computing time.   Section 394

provides, in relevant part, that, "[i]n computing any period of time . . . , the day of the act[] shall not

be included," that the "last day of the period . . . shall be included, unless it is a Saturday, Sunday,

or a legal holiday, in which event the period shall run until the end of the next day which is neither

a Saturday, a Sunday, nor a legal holiday," and that "[w]hen the period of time prescribed or

allowed is less than seven days, intermediate Saturdays, Sundays, and legal holidays shall be

excluded in the computation."   2 U.S.C. § 394.   Section 1446(b)(1), in contrast, does not contain

a provision analogous to § 394, but rather provides in relevant part:

> The notice of removal of a civil action or proceeding shall be filed within 30 days
> after the receipt by the defendant, through service or otherwise, of a copy of the
> initial pleading setting forth the claim for relief upon which such action or
> proceeding is based, or within 30 days after the service of summons upon the
> defendant if such initial pleading has then been filed in court and is not required to
> be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b)(1). Section 1446(b)'s language -- which specifies a deadline by which

removal must occur -- is different from the procedural language in § 394.   Thus, the Advisory

Committee's citation to § 394 does not support Hernandez' argument that § 1446(b) specifies a

method of computing time within the meaning of rule 6(a).

　　　　Moreover, the Advisory Committee's notes distinguish between a fixed period of time, to

which rule 6(a) does not apply, and a time period such as thirty days, to which the time

computation provisions in rule 6(a) do apply.   *See* Fed. R. Civ. P. 6(a) advisory committee's note.

The Advisory Committee's notes indicate:   "If, for example, the date for filing is 'no later than

November 1, 2007,' subdivision (a) does not govern."   Fed. R. Civ. P. 6(a) advisory committee's

note.   The notes further provide,: "But if a filing is required to be made 'within 10 days' or 'within

72 hours,' subdivision (a) describes how that deadline is computed."   Fed. R. Civ. P. 6(a) advisory

committee's note.   The thirty-day time period prescribed by § 1446(b)(1) is akin to the time

periods of ten days or seventy-two hours to which the notes indicate that rule 6(a) applies.   *See*

Fed. R. Civ. P. 6(a) advisory committee's note.

　　　　The Court concludes that the time computation rules set forth in rule 6(a) govern the

manner in which the thirty-day time frame set forth in § 1446(b) is computed.   Thus, the Notice of

Removal and accompanying consents were timely filed, and the Court therefore denies

Hernandez' Motion to Remand on the ground that the filings were untimely.

## II.     THE NOTICE OF REMOVAL COMPLIED WITH 28 U.S.C. § 1446(A).

The Court does not agree with Hernandez' argument that Menlo Logistics' failure to comply with the requirements of 28 U.S.C. § 1446(a), by attaching all of the summonses at the time it filed its Notice of Removal, constitutes a ground for remand.   *See* Motion to Remand ¶ 26, at 10.   Section 1446(a) requires that a notice of removal contain a short and plain statement of the grounds for removal "together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."   28 U.S.C. § 1446(a).   Hernandez argues that Menlo Logistics failed to attach to its Notice of Removal the summons it received or the summons that Taurus Southern received within the thirty-day deadline set forth in the removal statute.   *See* Tr. at 18:21-25, 19:1-4 (Isaac).   Although Menlo Logistics filed the necessary summonses thirty days after filing the Notice of Removal, Hernandez nonetheless argues that remand is required.   *See* Tr. at 19:5-7 (Isaac).   Hernandez further contends that although D.N.M.LR-Civ. 81.1A grants a removing party twenty-eight days from the date of the filing of a notice of removal to file the necessary attachments, Menlo Logistics filed the necessary summonses thirty days after it removed the case.   *See* Tr. at 25:1-6 (Isaac).

The Court concludes that Menlo Logistics' failure to attach the required summonses to the Notice of Removal was a de minimis procedural defect that does not merit remand, particularly given that Menlo Logistics cured the defect thirty days after filing the Notice of Removal.   The Court further notes that the defect did not prejudice Hernandez or impair the Court's ability to proceed with the case.   Thus, the Court declines to grant the Motion to Remand on this procedural ground.

The Court's decision is consistent with the Tenth Circuit's holding in *Countryman v. Farmers Insurance Exchange* that "a removing party's failure to attach the required state court papers to a notice of removal is a mere procedural defect that is curable."   639 F.3d at 1272-73 (citing *Cook v. Randolph County*, 573 F.3d at 1150 (holding that removing party's failure to include all state court pleadings and process with a notice of removal was "procedurally incorrect" but was not a "jurisdictional defect"); *Usatorres v. Marina Mercante Nicaraguenses, S.A.*, 768 F.2d at 1286 (noting that the failure to file papers required by the removal statute may be remedied); *Riehl v. Nat'l Mut. Ins. Co.*, 374 F.2d at 742 (holding that removing party's failure to include state court complaint with a notice of removal did not deprive the district court of jurisdiction, because "the omission was but a minor irregularity of no consequence" and "[t]o permit this minor irregularity to defeat the District Court's jurisdiction would be to elevate form over substance"); *Covington v. Indemnity Ins. Co.*, 251 F.2d at 932-33 (holding that a removing party's failure to include "a copy of all process, pleadings and orders served upon him" was a mere procedural defect, and not a jurisdictional defect necessitating remand, and that missing state court papers could be supplied later); *Yellow Transp., Inc. v. Apex Digital, Inc.*, 406 F. Supp. 2d at 1219 (reaching same result where defendant inadvertently did not attach state court summons)). In *Countryman v. Farmers Insurance Exchange*, the defendants' joint notice of removal contained "'a copy of all process, pleadings, and orders' served on Defendant Farmers Insurance and 'a copy of all process, pleadings, and orders' served on Defendant Mid-Century Insurance *except* for the summons."   639 F.3d at 1271 (quoting 28 U.S.C. § 1446(a)).   "Shortly after expiration of the thirty-day removal period, Defendants supplemented their original and timely joint notice of

removal to include a copy of the [missing] summons." *Countryman v. Farmers Ins. Exchange*, 639 F.3d at 1271.   The Tenth Circuit held that the

> omission of a summons from Defendants' joint notice of removal was an inadvertent, minor procedural defect that was curable, either before or after expiration of the thirty-day removal period.   Defendants supplemented their joint notice of removal to include the summons, and Plaintiff was not prejudiced by the omission.   Nor was the district court's ability to proceed with the case materially impaired.

*Countryman v. Farmers Ins. Exchange*, 639 F.3d at 1273.   *Compare May v. Bd. of County Comm'rs*, 2013 WL 2250658, at *24-25 (holding that the defendants' failure to provide the court with a copy of the plaintiff's response to the motion to dismiss did not require remand, because the procedural defect was de minimis and the defendants cured it within twenty-eight days, consistent with D.N.M.LR-Civ. 81.1)(citing *Countryman v. Farmers Ins. Exchange*, 639 F.3d at 1272)(additional citations omitted).

       Similarly, Menlo Logistics cured its defect thirty days after it filed its Notice of Removal by filing the missing summonses.   This defect, like the defect in *Countryman v. Farmers Insurance Exchange*, was de minimis, cured, did not prejudice Hernandez, and did not impair the Court.   Thus, the Court will not grant the Motion to Remand on the ground that Menlo Logistics did not comply with § 1446(a).

## III.    MENLO LOGISTICS AND HEWLETT-PACKARD HAVE FAILED TO SATISFY THEIR BURDEN OF DEMONSTRATING THAT HERNANDEZ FRAUDULENTLY JOINED ALVAREZ TO DEFEAT DIVERSITY JURISDICTION.

       Menlo Logistics and Hewlett-Packard argue that Hernandez fraudulently joined Alvarez -- a resident of the forum state -- solely to defeat diversity jurisdiction.   If Menlo Logistics and Hewlett-Packard establish that Hernandez fraudulently joined Alvarez, the Court may conclude

that they properly removed the case based upon diversity-of-citizenship jurisdiction even though there was an absence of complete diversity. *Cf. Am. Nat'l Bank & Trust Co. v. Bic Corp.*, 931 F.2d at 1412 (explaining that a defendant may remove a case to federal court based upon diversity-of-citizenship jurisdiction in the absence of complete diversity if a plaintiff joins a resident of the forum state fraudulently to defeat federal jurisdiction) (citations omitted)

In *Zufelt v. Isuzu Motors America, L.L.C.*, the Court held that, to establish that a party was fraudulently joined, a defendant has the burden of demonstrating that "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be improperly joined. *Zufelt v. Isuzu Motors Am., L.C.C.*, 727 F. Supp. 2d at 1124-25 (Browning, J.)(citing *Montano v. Allstate Indem.*, 2000 WL 525592, at *4-5); *Bio-Tec Environmental, LLC v. Adams*, 792 F. Supp. 2d at 1216 (Browning, J.)).   Menlo Logistics and Hewlett-Packard bear the burden of proof of establishing that there is "no possibility" that Hernandez would be able to succeed on a cause of action against Alvarez. *Cf. Montano v. Allstate Indem.*, 2000 WL 525592, at *1.   To satisfy this burden, Menlo Logistics and Hewlett-Packard provide no evidence, but rather rely solely upon the Complaint's allegations.   The Defendants contend that the Complaint's allegations alone demonstrate that Alvarez is immune from Hernandez' claims pursuant to the NMWCA's exclusivity provisions.

The NMWCA "provides the exclusive remedy against employers for employees injured on the job," *Vigil v. Digital Equip. Corp.*, 122 N.M. at 418, 925 P.2d at 884; *Hamburg v. Sandia Corp.*, 143 N.M. at 603, 179 P.3d at 1211, provided the employer complies with the preconditions set forth in the NMWCA, *see Rivera v. Sagebrush Sales, Inc.*, 118 N.M. at 677-78, 884 P.2d at 833-34.   The exclusivity provisions also provide employees of an employer covered by the

NMWCA with immunity from suit in tort if a co-employee brings the suit.  *See Street v. Alpha Constr. Servs.*, 140 N.M. at 426-27, 143 P.3d at 188-89 (citing N.M. Stat. Ann. §§ 52-1-6(E); *id.* § 52-1-8)(additional citation omitted).   To be entitled to immunity under the NMWCA's exclusivity provisions, a party asserting the defense must establish the existence of an employment relationship.  *See Street v. Alpha Constr. Servs.*, 140 N.M. at 426, 143 P.3d at 188 (citation omitted); *Rivera v. Sagebrush Sales, Inc.*, 118 N.M. at 680, 884 P.2d at 836.   An employment relationship is present if the worker at the time of the injury was "a direct employee, a statutory employee, or a special employee.   In contrast, if [the worker] was an independent contractor, he would not have an employment relationship with [an alleged employer]."  *Hamburg v. Sandia Corp.*, 143 N.M. at 603, 179 P.3d at 1211.   *See also Rivera v. Sagebrush Sales, Inc.*, 118 N.M. at 678-79, 884 P.2d at 834-35.   A defendant may be a "special employer" entitled to protection under the exclusivity provisions of the NMWCA if three conditions are satisfied:   "(1) the employee has made a contract of hire, express or implied, with the special employer; (2) the work being done is essentially that of the special employer; and (3) the special employer has the right to control the details of the work."   *Rivera v. Sagebrush Sales, Inc.*, 118 N.M. at 678-79, 884 P.2d at 834-35 (citations omitted).

In support of their claim that Alvarez is immune from suit, Menlo Logistics and Hewlett-Packard argue that they were the special employers both of Hernandez and of Alvarez, that Alvarez was Hernandez' co-employee, and that Alvarez therefore was immune from Hernandez' claims under the NMWCA's exclusivity provisions.  *See* Tr. at 48:22-25, 49:1-5 (Franke)("There is no question that if Mr. Alvarez and Mr. Hernandez are co-employees and that the defendants are their special employers, then the workers' compensation exclusive remedy

would bar all of the negligence claims and basically any tort claims.").   In response, Hernandez

contends that the Complaint's allegations do not establish that Menlo Logistics and

Hewlett-Packard were Hernandez' special employers or that Alvarez was Hernandez'

co-employee.   Hernandez also maintains that the Defendants have failed to sustain their burden of

demonstrating that Hernandez has no possibility of establishing a cause of action against Alvarez,

because the allegations do not indicate that Menlo Logistics and Hewlett-Packard complied with

the NMWCA's insurance requirements.   *See* Tr. at 51:8-13 (Isaac).   Finally, Hernandez argues

that the Complaint's allegations state a claim against Alvarez under the exception to the

NMWCA's immunity provisions set forth in *Delgado v. Phelps Dodge Chino, Inc.   See* Tr. at

39:5-15 (Isaac).

The Court agrees with Hernandez that the Defendants have failed to sustain their burden of

demonstrating that he has no possibility of establishing a cause of action against Alvarez.   To

substantiate their assertion that Alvarez is entitled to immunity under the NMWCA's exclusivity

provisions, Menlo Logistics and Hewlett-Packard must establish, among other things, that Menlo

Logistics and Hewlett-Packard are immune from Hernandez' claims, because they were

Hernandez' special employers, because their immunity flows to Alvarez who was their employee,

and because Hernandez and Alvarez were co-employees.   The Complaint's allegations, however,

do not necessarily establish that Hernandez was Menlo Logistics' and Hewlett-Packard's special

employee or that Hernandez and Alvarez were co-employees.   Furthermore, the Complaint's

allegations do not demonstrate that Menlo Logistics and Hewlett-Packard complied with the

NMWCA's insurance provisions.   In addition, the Defendants have not satisfied their burden of

demonstrating that Hernandez has no possibility of establishing a claim against Alvarez under the

exception set forth in *Delgado v. Dodge Phelps Chino, Inc.* to the NMWCA's immunity provisions.

>   A.   THE COMPLAINT'S ALLEGATIONS DO NOT NECESSARILY ESTABLISH THAT MENLO LOGISTICS AND HEWLETT-PACKARD WERE HERNANDEZ' SPECIAL EMPLOYERS.

A defendant may be a "special employer" entitled to protection under the NMWCA's exclusivity provisions if three conditions are satisfied:   "(1) the employee has made a contract of hire, express or implied, with the special employer; (2) the work being done is essentially that of the special employer; and (3) the special employer has the right to control the details of the work." *Rivera v. Sagebrush Sales, Inc.*, 118 N.M. at 678-79, 884 P.2d at 834-35 (citations omitted). Hernandez does not dispute that the work being done was essentially that of Menlo Logistics and Hewlett-Packard and concedes that the Complaint alleges that Menlo Logistics and Hewlett-Packard had the right to control the details of Hernandez' work.   *See* Tr. at 38:10-13 (Isaac).   In dispute, however, is the first element of the special employer test -- i.e., whether Hernandez made a contract of hire, express or implied, with Menlo Logistics and Hewlett-Packard.   *See, e.g.*, Tr. at 49:12-23 (Isaac).   *Cf. Rivera v. Sagebrush Sales, Inc.*, 118 N.M. at 678-79, 884 P.2d at 834-35 (citations omitted).

The Complaint alleges that Menlo Logistics and Hewlett-Packard exercised control over Hernandez.   *See* Complaint ¶ 6, at 2 (alleging that while, "under the control of Defendant Menlo and Defendant Hewlett," Hernandez suffered severe, debilitating, and permanent personal injuries); Complaint ¶ 6, at 2 (alleging that the "warehouse and the workers inside were under the control of Defendant Menlo and Defendant Hewlett," who "exercised actual and contractual right of control on the job, including control over safety equipment, materials used on the job,

inspection and approval of the work and compliance with OSHA requirements"); Complaint ¶ 7, at 3 (alleging that "Defendants Menlo and Hewlett had control over the manner, methods and procedures that the employees, agents, and representatives used in carrying out assigned duties," and Menlo Logistics and Hewlett-Packard "retained contractual and actual control over the entire job regarding procedure, completion time, safety on the job, scheduling of work and authority to specify insurance coverage and other details of the work"); Complaint ¶ 15, at 5 (alleging that Menlo Logistics and Hewlett-Packard were "engaged in a joint enterprise" with a "mutual right of control").   Menlo Logistics and Hewlett-Packard argue that the allegations of control, including the allegation that the Defendants "exercised actual and *contractual* right of control on the job," Complaint ¶ 6, at 2 (emphasis added), and the allegation that the Defendants "retained *contractual* and actual control over the entire job," Complaint ¶ 7, at 3 (emphasis added), demonstrate that Hernandez consented to an employment relationship with them.   Thus, Menlo Logistics and Hewlett-Packard conclude that, because there is no dispute as to the second and third elements of the special employer test, the Complaint "expressly alleges every one [of] the elements necessary to meet the special employer test."   Tr. at 48:18-21 (Franke).

Hernandez contends that the Complaint does not establish the first element of Hernandez' consent to an employment relationship with Menlo Logistics and Hewlett-Packard.   *See* Tr. at 49:12-23 (Isaac).   Hernandez points to paragraph six, which alleges that he "was working in the course and scope of his employment *with his employer Spherion Atlantic General Contractors*," Complaint ¶ 6, at 5 (emphasis added), and not in the course and scope of his employment with Menlo Logistics or Hewlett-Packard as the Defendants suggest.   *See* Tr. at 38:8-10 (Isaac). Hernandez argues that the paragraphs identified by the Menlo Logistics and Hewlett-Packard

demonstrate only that they had the right to control Hernandez, and that "[r]ight of control does not equal the first element [of] contract of hire," and that the Defendants should not "conflate those two."  Tr. at 38:13-15 (Isaac).   According to Hernandez, "[t]here's no evidence . . . period . . . that [he] worked for the defendants.   And you can have a right of control over somebody without being their employer."   Tr. at 49:16-23 (Isaac).   Hernandez maintains, for example, that he could have been an independent contractor.   *See* Tr. at 52:4-7 (Isaac).

    The Court of Appeals of New Mexico has held that, with respect to "whether [an] employee has made a contract of hire with the special employer, the employee must have consented to the employment relationship."   *Rivera v. Sagebrush Sales, Inc.*, 118 N.M. at 679, 884 P.2d at 835 (citing 1C Larson, *supra* § 48.12 at 8-409)(noting that the employee's informed consent to a contract of hire is required, because the employee gives up rights when he or she enters into a new employment relationship, specifically the right to sue the employer at common law for negligence, and therefore it is necessary to show deliberate, informed consent to establish the relationship's existence).   In *Vigil v. Digital Equipment Corporation*, the Court of Appeals of New Mexico addressed the question of consent in the context of the first element of the special employer test.   122 N.M. at 420-21, 925, P.2d at 886-87.   The employment relationship was between a corporation -- the putative special employer -- and a temporary worker an employment agency lent to the corporation.   *See* 122 N.M. at 420-21, 925 P.2d at 886-87.   The Court of Appeals of New Mexico held that it could infer consent to a contract of employment on behalf of the plaintiff-worker, because the plaintiff "reported for work at [the corporation] and submitted to the supervision of [the corporation] for eight months prior to the accident, [the plaintiff] was paid according to the work he did for [the corporation], and [the corporation] had the power to terminate

[the plaintiff's] temporary employment at [the corporation]" if the plaintiff's work was unsatisfactory.   122 N.M. at 420-21, 925 P.2d at 886-87.   Because the employee impliedly consented to a contract of hire, and the other requirements of special employment were present, the Court of Appeals of New Mexico concluded that the temporary worker's exclusive remedy for injuries sustained at the corporate work site was pursuant to the NMWCA.   *See* 122 N.M. at 420-21, 925 P.2d at 886-87.

The facts upon which the Court of Appeals of New Mexico inferred consent to an employment relationship in *Vigil v. Digital Equipment Corporation* are distinguishable from the facts alleged in the Complaint.   In *Vigil v. Digital Equipment Corporation*, the Court of Appeals of New Mexico held that it could infer consent to a contract of hire, because the plaintiff reported to work at the putative special employer, submitted to the alleged employer's supervision for eight months before the accident, was paid according to the work he did for employer, and the employer had the power to terminate the plaintiff's temporary employment.   *See* 122 N.M. at 420-21, 925 P.2d at 886-87.   The Complaint here alleges only that Menlo Logistics and Hewlett-Packard had the right to control Hernandez, including a right to contractual control.   *See* Complaint ¶¶ 6, 7, 14, 15, at 2, 5.   The Complaint does not indicate the number of months that Hernandez submitted to Menlo Logistics' and Hewlett-Packard's supervision, does not indicate the manner in which Hernandez was paid, and does not indicate whether Menlo Logistics and Hewlett-Packard had the power to terminate his employment.

In *Rivera v. Sagebrush Sales, Inc.*, however, the Court of Appeals of New Mexico cited persuasive authorities from other jurisdictions holding that consent to an employment relationship can be inferred from a right to control a worker.   *See* 118 N.M. at 679, 884 P.2d at 835 (citing

*Santa Cruz Poultry, Inc. v. Superior Ct.*, 239 Cal. Rptr. 578, 580, 582-83 (Cal. 1987) (holding that the worker made a contract of hire with the employer, because the employer's control over worker's job performance implies, as a matter of law, the employment relationship between them); *English v. Lehigh County Auth.*, 428 A.2d at 1353-54 (holding that the worker made a contract of hire, because the worker's submitting himself to the special employer's control and supervision demonstrates consent to employment))(additional citations omitted).   In that same opinion, however, the Court of Appeals of New Mexico also cited persuasive authority requiring a showing above and beyond actual control to infer consent to an employment relationship.  *See* 118 N.M. at 679, 884 P.2d at 835 (citing *Antheunisse v. Tiffany & Co.*, 551 A.2d at 1008 (holding that worker impliedly contracted to the employment relationship where the worker knew she would be hired out to various temporary assignments, voluntarily reported to work, and followed the special employer's instructions); *Wright v. Habco, Inc.*, 419 S.W.2d at 36 (holding that the worker consented to work for the special employers and thus that a contract for hire existed, because the worker entered into employment relationship with a labor broker and worked under the special employer's supervision for several weeks before the accidental injury)).

In a recent opinion, *Castillo v. McCarthy Building. Cos.*, 2013 WL 4515751, the Court of Appeals of New Mexico again addressed the question of implied consent to an employment relationship in the context of a special employment claim under the NMWCA.  In *Castillo v. McCarthy Building Cos.*, the defendant was the general contractor on a hotel construction project, and the plaintiff -- an employee of the defendant's drywall subcontractor who had been assigned to work at the defendant's site with a clean-up composite crew on the day of the accident -- was injured when he fell several stories at the defendant's job site.  *See* 2013 WL 4515751, at *1.

The Court of Appeals of New Mexico concluded that the plaintiff accepted an assignment to work for the defendant, because it was undisputed that the plaintiff was assigned to the composite crew the day of the accident, that the plaintiff was aware that the defendant operated the composite crew, and that the plaintiff worked for the composite crew for at least part of the day.  *See* 2013 WL 4515751, at *3.   The Court of Appeals of New Mexico held:   "Therefore, Plaintiff's acceptance of this assignment is sufficient to establish as a matter of law an implied contract for hire between Plaintiff and Defendant for the purpose of the special employer test."   2013 WL 4515751, at *3.

In *Castillo v. McCarthy Building Cos.*, the Court of Appeals of New Mexico inferred consent based upon less of a showing than in *Vigil v. Digital Equipment Corporation*.   In the former case, the plaintiff had worked at the defendant's job site for only one-half of day, *see Castillo v. McCarthy Bldg. Cos.*, 2013 WL 4515751, at *3, whereas in the latter case the plaintiff had worked at the job site for eight months, *see Vigil v. Digital Equip. Corp.*, 122 N.M. at 420-21, 925 P.2d at 886-87.   Moreover, in *Castillo v. McCarthy Building Cos.*, there was no showing as there was in *Vigil v. Digital Equipment Corporation*, of how the plaintiff was paid or the defendant's ability to terminate the plaintiff if the plaintiff's work was unsatisfactory, but rather, the undisputed facts in *Castillo v. McCarthy Building Cos.* showed only that the plaintiff was aware that the defendant operated the composite crew and that the plaintiff was assigned to the defendant's crew on the day of the accident.   *See* 2013 WL 4515751, at *3.   The Complaint here does not expressly allege that Hernandez was aware that Menlo Logistics and Hewlett-Packard operated the job site at which the accident occurred, or that Hernandez was assigned to Menlo Logistics' and Hewlett-Packard's job sites.

- 66 -

"'In evaluating fraudulent joinder claims, [a court] must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party.'" *Montano v. Allstate Indem.*, 2000 WL 525592, at *1 (quoting *Hart v. Bayer Corp.*, 199 F.3d at 246)(additional citations omitted).   Although the Court of Appeals of New Mexico in *Rivera v. Sagebrush Sales, Inc.* cited opinions conflating the requirements of consent to a contract of hire with a right of control, the Court of Appeals of New Mexico in *Vigil v. Digital Equipment Corporation* inferred a contract based upon more than a right to control, finding instead that a contract could be implied, because, in addition to the right of control, the plaintiff submitted to the employer's supervision for eight months and was paid according to the work he did for the employer, and because the employer had the power to terminate the plaintiff.   *Cf.* 122 N.M. at 420-21, 925 P.2d at 886-87.   In *Castillo v. McCarthy Building Cos.*, however, the Court of Appeals of New Mexico required a significantly less stringent showing to infer consent to the employment relationship, and held that the plaintiff consented to the employment relationship where he was assigned to the defendant's composite crew, knew that the defendant operated the composite crew, and worked on the crew for at least one-half of the day before the accident.   *See* 2013 WL 4515751, at *3.

The Complaint here alleges only that Menlo Logistics and Hewlett-Packard had the right to control Hernandez.   Although it seems likely that the evidence will indicate -- as in *Castillo v. McCarthy Building Cos.* -- that Hernandez was assigned to Menlo Logistics' and Hewlett-Packard's job sites and that he was aware that Menlo Logistics and Hewlett-Packard operated the job site at which the accident occurred, at this stage in the litigation, the Court must interpret the facts in the light most favorable to Hernandez.   Thus, the Court concludes that the

Complaint's allegations do not establish that Hernandez consented to the employment relationship.   Accordingly, the Court holds that Menlo Logistics and Hewlett-Packard have not satisfied their burden under the fraudulent joinder standard of demonstrating that Hernandez was their special employee.

**B.   THE COMPLAINT'S ALLEGATIONS DO NOT NECESSARILY ESTABLISH THAT ALVAREZ WAS HERNANDEZ' CO-EMPLOYEE.**

Menlo Logistics and Hewlett-Packard also must demonstrate that Alvarez was their employee and that he was Hernandez' co-employee.   These showings are necessary, because the NMWCA's exclusivity provisions provide employees with immunity only if the NMWCA covers the employer and a co-employee brings the suit.   *See Street v. Alpha Constr. Servs.*, 140 N.M. at 426-27, 143 P.3d at 188-89 (citations omitted).   With respect to the question whether Menlo Logistics and Hewlett-Packard were Alverez' employers, the Defendants contend that paragraph fourteen of the Complaint establishes this relationship.   Paragraph fourteen in relevant part provides that Alvarez' acts and omissions "in the course and scope of his employment with defendants constituted negligence."   Complaint ¶ 14, at 5.   The admission, however, that Alvarez was working in the "scope of his *employment* with defendants" does not necessarily establish what employment relationship Alvarez had with the Defendants.   Complaint ¶ 14, at 5 (emphasis added).   Under New Mexico law, an employment relationship exists if the worker "was a direct employee, a statutory employee, or a special employee."   *Hamburg v. Sandia Corp.*, 143 N.M. at 603, 179 P.3d at 1211.   *See also Rivera v. Sagebrush Sales, Inc.*, 118 N.M. at 678-79, 884 P.2d at 834-35.   Hernandez also contends that, based on this allegation, it is not clear whether Alvarez was an independent contractor of Menlo Logistics and/or of Hewlett-Packard.   *See* Tr. at

38:16-22, 44:3-5 (Isaac).[5]

The Defendants argue that Alvarez was Menlo Logistics' and Hewlett-Packard's special employee, and that Hernandez, who they contend was also a special employee, was Alvarez' co-employee.  *See* Tr. at 35:9-17 (Franke)(arguing that Menlo Logistics and Hewlett-Packard were the special employers of both Hernandez and Alvarez); Tr. at 48:22-49:5 (Franke)("There is no question that . . . the defendants are their [-- Hernandez' and Alvarez' --] special employers."); Tr. at 35:3-5 (Franke)(arguing that paragraph fourteen "is an express allegation that defendant Alvarez was a co-employee at the time and in the course and scope of his employment").  Menlo Logistics and Hewlett-Packard contend that, because they have demonstrated that they were the special employers both of Hernandez and of Alvarez and that Hernandez and Alvarez were co-employees, they have satisfied their burden of demonstrating that Alvarez is immune from Hernandez' claims under the exclusive remedy defense set forth in the NMWCA.  If Menlo Logistics and Hewlett-Packard are correct that Alvarez was their special instead of direct employee, a finding of special employment opens the door to the possibility that -- contrary to the Defendants' argument -- the NMWCA's immunity provisions did not cover Alvarez at the time of the accident.

---

[5]   Although an employee typically is characterized as having "employment" with an employer, the Court agrees with Hernandez that, construing the facts alleged in the Complaint in the light most favorable to him, *cf. Montano v. Allstate Indem.*, 2000 WL 525592, at *1 ("'In evaluating fraudulent joinder claims, [a court] must initially resolve all disputed questions of fact . . . in favor of the non-removing party.'")(quoting *Hart v. Bayer Corp.*, 199 F.3d at 246)(additional citations omitted), the term "employment" could be used in its non-technical sense to describe a relationship between a principal and an independent contractor.  The Court notes, however, that this conclusion is not essential to the Court's holding that the Complaint's allegations do not establish that Alvarez was Hernandez' co-employee.  Rather, that Alvarez may have been a special employee of Menlo Logistics and Hewlett-Packard, as opposed to a direct employee, is sufficient to negate a finding that Alvarez was the Hernandez' co-employee.

- 69 -

Under New Mexico law, while employees of an employer covered by the NMWCA are also immune from suit in tort by co-employees under the NMWCA's exclusivity provisions, *see Street v. Alpha Constr. Servs.*, 140 N.M. at 426-27, 143 P.3d at 188-89 (citations omitted), immunity is not extended to co-special employees of a special employer, *see Street v. Alpha Constr. Servs.*, 140 N.M. at 428, 143 P.3d at 190.   In *Street v. Alpha Construction Services*, the Court of Appeals of New Mexico distinguished special co-employees from direct co-employees, and held that special co-employees are not immune from liability.   *See* 140 N.M. at 428, 143 P.3d at 190.   In *Street v. Alpha Construction Services*, the plaintiff was the direct employee of Technadyne Engineering, but a special employee of Sandia Corporation pursuant to a contract between Technadyne Engineering and Sandia Corporation under which the plaintiff provided administrative support services at Sandia Corporation.   *See* 140 N.M. at 425, 143 P.3d at 187. The defendant Alpha Construction was a roofing company that provided employees to Sandia Corporation to undertake roofing repairs through a contract between Alpha Construction and Sandia Corporation.   *See Street v. Alpha Constr. Servs.*, 140 N.M. at 425-26, 143 P.3d at 187-88. The plaintiff sued Alpha Construction for injuries the plaintiff allegedly sustained because of Alpha Construction's roofing activities.   *See Street v. Alpha Constr. Servs.*, 140 N.M. at 426, 143 P.3d at 188.   If the plaintiff, who was a special employee of Sandia Corporation, had sued one of Sandia Corporation's direct employees, the direct employee would have been entitled to immunity under the NMWCA.   *See Street v. Alpha Constr. Servs.*, 140 N.M. at 430, 143 P.3d at 192 (Kennedy, J., dissenting).   Because, however, the plaintiff sued another special employee of Sandia Corporation, and this other special employee had a different direct employer from the plaintiff's direct employer and worked for Sandia Corporation under a different contract from the

plaintiff's contract, the NMWCA's immunity provisions did not cover the special employee. *Street v. Alpha Constr. Servs.*, 140 N.M. at 428, 143 P.3d at 190.

In so holding, the Court of Appeals of New Mexico reasoned that special co-employees were not entitled to immunity, because the "*quid pro quo* for the protection afforded to the workers" was missing and therefore could not provide the basis for any immunity that the NMWCA grants.   *Street v. Alpha Constr. Servs.*, 140 N.M. at 427, 143 P.3d at 189.   The Court of Appeals of New Mexico explained:

> "The reason for the employer's immunity is the *quid pro quo* by which the employer gives up its normal defenses and assumes automatic liability, while the employee gives up his or her right to common-law verdicts.   This reasoning can be extended to the tortfeasor coemployee, who also is involved in this compromise of rights.   Perhaps, so the argument goes, one of the things the coemployee is entitled to expect in return for what he or she has given up is freedom from common-law suits based on industrial accidents in which that coemployee is at fault."

*Street v. Alpha Constr. Servs.*, 140 N.M. at 427, 143 P.3d at 189 (quoting 6 Larson, *supra* § 111.03[2], at 111-12).   In the case of a co-special employee, however, the quid pro quo is not present.   Thus, while "[a] special employer has a workers' compensation liability to the direct employer's employees, and therefore receives the *quid pro quo* of immunity from suit," "direct employers -- such as Alpha and Technadyne Engineering here -- have no comparable liability to each other's employees, or to the employees of other subcontractors, and therefore are not entitled to the *quid pro quo* of immunity from suit."   *Street v. Alpha Constr. Servs.*, 140 N.M. at 428, 143 P.3d at 190.   Thus, the Court of Appeals of New Mexico held that "the subcontractor or direct employer, in this case Alpha, who neither provided nor was required to provide insurance protections for employees of Technadyne Engineering, is not entitled to immunity from suit under the exclusivity provisions of the Act," because "Alpha and Plaintiff are not co-employees for

purposes of the Act."  *Street v. Alpha Constr. Servs.*, 140 N.M. at 428, 143 P.3d at 190.   Because the NMWCA's immunity provisions did not shield the direct employer Alpha Construction from the plaintiff's claims, so too Alpha Construction's employees of Alpha were not granted immunity from the plaintiff's claims.  *Cf. Street v. Alpha Constr. Servs.*, 140 N.M. at 426-27, 143 P.3d at 188-89 (explaining that employees of an employer covered by the NMWCA are also immune from suit in tort by co-employees under the NMWCA's exclusivity provisions)(citations omitted).

Menlo Logistics and Hewlett-Packard argue that they were Alvarez' special employers, and point to paragraph fourteen of the Complaint to support this proposition.  *See* Tr. at 35:9-17 (Franke); Tr. at 48:22-25, 49:1-5 (Franke).  Paragraph fourteen alleges that Alvarez' acts and omissions "in the course and scope of his employment with defendants constituted negligence." Complaint ¶ 14, at 5.   This allegation does not specify the type of employment relationship -- i.e., special or direct employment -- between Alvarez and Menlo Logistics and Hewlett-Packard. Menlo Logistics and Hewlett-Packard are correct, however, that a possibility exists that their relationship with Alvarez was one of special employment.

The Court concludes that, if Menlo Logistics and Hewlett-Packard were special employers of both Hernandez and Alvarez, and Hernandez and Alvarez were working for their special employers under two separate contracts, under the Court of Appeals of New Mexico's decision in *Street v. Alpha Construction Services*, Alvarez would not be immune from Hernandez' claims under the NMWCA's exclusive remedy provisions.   In *Street v. Alpha Construction Services*, the Court of Appeals of New Mexico explained that co-special employees working under different contracts with a shared special employer are not entitled to immunity, because the quid pro quo of exchanging immunity for liability is not present.  *See* 140 N.M. at 428, 143 P.3d at 190.

- 72 -

Here, as in *Street v. Alpha Construction Services*, based upon the Complaint's allegations it is possible that Hernandez and Alvarez both were special employees of Menlo Logistics and of Hewlett-Packard.   Hernandez was employed by the direct employer Spherion Atlantic, *see* Complaint ¶ 6, at 5, and based upon the Complaint's allegations, a possibility exists that Alvarez was the direct employee of another entity that was not Spherion Atlantic.   Hernandez and Alvarez, who would be co-special employees of different direct employers working under separate contracts for the same special employer, would not be co-employees entitled to immunity from suit from each other.   *Cf. Street v. Alpha Constr. Servs.*, 140 N.M. at 428, 143 P.3d at 190 (holding that a co-special employee working for a different direct employer than a plaintiff was not entitled to immunity under the NMWCA's exclusivity provisions from the plaintiff's claims).[6]   Under this scenario, Hernandez could establish a cause of action against Alvarez.   Thus, the Court concludes that Menlo Logistics and Hewlett-Packard have not satisfied their burden under the fraudulent joinder standard.

### C.   THE COMPLAINT'S ALLEGATIONS DO NOT ESTABLISH THAT MENLO LOGISTICS AND HEWLETT-PACKARD COMPLIED WITH THE INSURANCE REQUIREMENTS IN THE NMWCA.

Hernandez also argues that Alvarez may not be entitled to immunity by virtue of Menlo

---

[6]   A possibility also exists under allegations in paragraph fourteen that Alvarez was a direct employee of Menlo Logistics and Hewlett-Packard, in which case Alvarez would be entitled to immunity under the Act.   *See Street v. Alpha Constr. Servs.*, 140 N.M. at 430, 143 P.3d at 192 (Kennedy, J., dissenting)(recognizing that, if the plaintiff, who was a special employee of Sandia Corporation, had sued one of Sandia Corporation's direct employees, the direct employee would have been entitled to immunity under the Workers' Compensation Act).   The requirement for demonstrating fraudulent joinder, however, requires that the party opposing remand demonstrate that the plaintiff has "no possibility" of establishing a cause of action against the alleged improperly-joined party.   Because only a possibility exists that Alvarez was a direct employee instead of a special employee, the Complaint's allegations do not establish that Menlo Logistics and Hewlett-Packard have sustained their burden under the fraudulent joinder standard.

Logistics' and Hewlett-Packard's alleged immunity under the NMWCA, because the Complaint's allegations do not indicate that the Menlo Logistics or Hewlett-Packard complied with the NMWCA's insurance provisions.   One of the NMWCA's preconditions is that, at the time of the accident, the "employer has complied with the provisions thereof regarding insurance."   N.M. Stat. Ann. § 52-1-9(A).   *See Peterson v. Wells Fargo Armored Servs. Corp.*, 129 N.M. at 161, 3 P.3d at 138 ("In order to take advantage of the exclusive remedy provisions of the Act, an employer must comply with the provisions of the Act concerning insurance.")(citing N.M. Stat. Ann. §§ 52-1-6(C)-(D), 52-1-8, 52-1-9).   "If the employer fails to comply with those provisions, the worker can sue the employer either for compensation benefits or for damages in tort caused by the employer's negligence."   *Peterson v. Wells Fargo Armored Servs. Corp.*, 129 N.M. at 161, 3 P.3d at 138 (citing *Harger v. Structural Servs., Inc.*, 121 N.M. at 666, 916 P.2d at 1333).   The Complaint's allegations, upon which the Defendants solely rely to carry their burden of establishing fraudulent joinder, do not indicate that the Defendants complied with these insurance provisions.   Thus, the Court agrees that the Menlo Logistics and Hewlett-Packard have not met their burden of demonstrating fraudulent joinder because they have not shown that Hernandez' claims against Alvarez are barred by the NMWCA's exclusive remedy provisions.

### D.   THE COMPLAINT'S ALLEGATIONS DO NOT NECESSARILY ESTABLISH THAT THE EXECPTION TO IMMUNITY SET FORTH IN *DELGADO V. PHELPS DODGE CHINO, INC.* IS INAPPLICABLE.

The Defendants have also failed to satisfy their burden of demonstrating that the exception to the NMWCA's immunity provisions set forth in *Delgado v. Phelps Dodge Chino, Inc.* is inapplicable.   Hernandez argues that the Complaint alleges that the Defendants' willful conduct involved an "extreme degree of risk" of which the "defendants had actual subjective awareness of

- 74 -

the risk involved and proceeded with conscious indifference to the rights [and] welfare of others," and that the Court cannot determine until summary judgment whether the exception to the exclusive remedy defense set forth in *Delgado v. Phelps Dodge Chino, Inc.* will withstand scrutiny.   Tr. at 39:5-15 (Isaac).   The Defendants argue that the exception to the exclusive remedy defense applies only "in extremely egregious circumstances," which in *Delgado v. Phelps Dodge Chino, Inc.* constituted sending an employee down a tunnel to empty a pot of melted hot slag where the employer knew that there was "an extremely high likelihood, if not certainty of death in the circumstances, and the employer forced the employee to proceed in the face of that extreme risk."   Tr. at 36:1-5 (Franke).   Menlo Logistics and Hewlett-Packard maintain that the Complaint's allegations "clearly do not rise on their face anywhere near the types of allegations that are necessary to support a Delgado cause of action."   Tr. at 36:13-16 (Franke).   The Court does not agree that the Complaint's allegations absolutely preclude application of the *Delgado v. Phelps Dodge Chino, Inc.* exception.

In *Delgado v. Phelps Dodge Chino, Inc.*, the Supreme Court of New Mexico overruled the line of cases applying the actual intent test to determine whether the NMWCA's exclusivity provisions grant employers immunity from suit, because the Supreme Court of New Mexico concluded "that the actual intent test favors employers."   131 N.M. at 278, 34 P.3d at 1154. "Under [the actual intent] test, 'in order to allege matters which will render an employer liable in tort outside the [NMWCA], the plaintiff must allege matters indicating that the employer intended to injure the plaintiff.'"   *Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. at 277, 34 P.3d at 1153 (quoting *Johnson Controls World Servs. Inc. v. Barnes*, 115 N.M. at 119, 847 P.2d at 764).   The Supreme Court of New Mexico explained that, under the actual intent test, a court

- 75 -

> ignore[s] the "degree of gravity or depravity of the employer's conduct' unless it was comparable to 'a left jab to the chin,' because only then will it be 'non-accidental.'   When determining whether to deprive a worker of compensation, however, we do consider the depravity of the worker's conduct, and withhold compensation when that conduct reaches a far lower level of intent than that attending a 'left jab to the chin."

*Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. at 279, 34 P.3d at 1155 (quoting 6 Larson, *supra* § 103.03, at 103-9).   In place of the actual intent test, the Supreme Court of New Mexico implemented the following standard:   "[W]hen an employer intentionally inflicts or willfully causes a worker to suffer an injury that would otherwise be exclusively compensable under the Act, that employer may not enjoy the benefits of exclusivity, and the injured worker may sue in tort."   *Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. at 279-80, 34 P.3d at 1155-56. Willfulness renders a worker's injury non-accidental, and therefore outside the NMWCA's scope, when:

> (1) the worker or employer engages in an intentional act or omission, without just cause or excuse, that is reasonably expected to result in the injury suffered by the worker; (2) the worker or employer expects the intentional act or omission to result in the injury, or has utterly disregarded the consequences; and (3) the intentional act or omission proximately causes the injury.

*Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. at 280, 34 P.3d at 1156.

The Supreme Court of New Mexico, in describing the actual intent test, acknowledged that, if an employer willfully gave an employee a "left jab to the chin," this willful conduct would be sufficient under the actual intent test to render the NMWCA inapplicable.   *Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. at 279, 34 P.3d at 1155 (quoting 6 Larson, *supra* § 103.03, at 103-9). The Supreme Court of New Mexico concluded that the actual intent test favored employees and held that a new standard, under which it would be easier for an employee to overcome the NMWCA's immunity provisions, should replace the "actual intent" test.   *See Delgado v. Phelps*

*Dodge Chino, Inc.*, 131 N.M. at 278, 34 P.3d at 1154.   The Defendants argue that, under the new standard set forth in *Delgado v. Phelps Dodge Chino, Inc.*, the employer's conduct must be "extremely egregious," the employer must know that its conduct had "an extremely high likelihood, if not certainty of death in the circumstances," and the employer must nonetheless "force[] the employee to proceed in the face of that extreme risk."   Tr. at 36:1-5 (Franke).

The Court is not persuaded that the Supreme Court of New Mexico would hold that the new standard articulated in *Delgado v. Phelps Dodge Chino, Inc.* requires the willful conduct to result in a high likelihood or certainty of death.   If the Supreme Court of New Mexico contemplated that a "left jab to the chin" would be sufficient under the more stringent actual intent test, subsequently held that the actual intent test should be overruled because it favored employers, and replaced the actual intent test with a less stringent test that favored employees more than the former test, the Court does not believe the Supreme Court of New Mexico would now exempt conduct resulting in injuries less serious than death or almost certain death when it formerly included such conduct.   Rather, if a willful left jab to the chin was sufficient under the more stringent actual intent test, presumably the Supreme Court of New Mexico would hold that a willful left jab to the chin would be sufficient under the less stringent *Delgado v. Dodge Phelps Chino, Inc.* test.   *Cf. Coates v. Wal-Mart Stores, Inc.*, 127 N.M. at 53-54, 976 P.2d at 1005-06 (attributing intent to Wal-Mart despite the absence of any proof that Wal-Mart actually intended to injury the plaintiff, and holding that the NMWCA did not bar the plaintiff's tort claims based on sexual harassment, because Wal-Mart's supervisors knew about the sexual harassment but failed to take any action to stop it).

To carry their burden under the fraudulent joinder standard, Menlo Logistics and

Hewlett-Packard must demonstrate that Hernandez has no possibility of establishing a claim under

*Delgado v. Dodge Phelps Chino, Inc.* that Menlo Logistics and/or Hewlett-Packard

> (1) . . . engage[d] in an intentional act or omission, without just cause or excuse, that [was] reasonably expected to result in the injury suffered by the [Plaintiff]; (2) expected the intentional act or omission to result in the injury, or . . . utterly disregarded the consequences; and (3) the intentional act or omission proximately cause[d] the injury.

*Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. at 280, 34 P.3d at 1156.   Menlo Logistics and Hewlett-Packard seek to fulfill this burden based solely on the Complaint's allegations.   The Complaint alleges that all of the Defendants' actions "involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and of which the Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others."   Complaint ¶ 18, at 6. Hernandez further alleges that this conduct was "intentional" and that the Defendants' conduct caused his injuries.   Complaint ¶ 12, at 4; *id.* ¶ 14, at 5; *id.* ¶¶ 16, 18, at 6.   The Court cannot conclude that, based on these allegations, Hernandez has no possibility of falling within the *Delgado v. Phelps Dodge Chino, Inc.* exception to the NMWCA's exclusivity provisions.   *Cf. Zufelt v. Isuzu Motors Am., L.C.C.*, 727 F. Supp. 2d at 1124-25 (Browning, J.) (holding that a defendant's burden under the fraudulent joinder standard is to demonstrate that "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined) (citations omitted).   Thus, the Court concludes that the Menlo Logistics and Hewlett-Packard have failed to satisfy their burden of establishing that Hernandez fraudulently joined Alvarez for this reason as well.

- 78 -

**E.    THE COURT GRANTS HERNANDEZ' MOTION TO REMAND FOR LACK OF SUBJECT-MATTER JURISDICTION.**

At the conclusion of the parties' arguments on the question of fraudulent joinder, the Court indicated:

> My impression is that there [are] enough issues here that [the Defendants are] not going to meet the high standard for fraudulent joinder, so I'm inclined to . . . grant the motion to remand . . . , but I want to take a look at [the] special employer . . . issue[]. . . .   [But] it's going to be difficult for me to say on the record before the Court that there's no possibility of recovery here.

Tr. at 52:15-23 (Court).

Having reviewed all of the parties' arguments and the authorities supporting those arguments, the Court concludes that Menlo Logistics and Hewlett-Packard have failed to satisfy their burden under the fraudulent joinder standard of demonstrating that Hernandez has no possibility of establishing a cause of action against Alvarez.  The Court concludes that the Complaint's allegations leave open the possibility that (i) Hernandez was not a special or direct employee of Menlo Logistics or Hewlett-Packard, and therefore Menlo Logistics and Hewlett-Packard -- and by extension Alvarez -- would not be entitled to immunity under the NMWCA; (ii) Alvarez was a special employee of Menlo Logistics and Hewlett-Packard operating under a different contract from Hernandez, in which case Alvarez would not be Hernandez' co-employee entitled to immunity under the NMWCA; (iii) Menlo Logistics and/or Hewlett-Packard may not have complied with the NMWCA's insurance provisions, in which case Alvarez would not share in their immunity; and (iv) the exception to the NMWCA's immunity provisions set forth in *Delgado v. Phelps Dodge Chino, Inc.* may apply, in which case Alvarez would not be immune from Hernandez' claims.  Because all of these possibilities exist based upon the Complaint's allegations, the Court holds that Menlo Logistics and Hewlett-Packard have

failed to satisfy their burden under the fraudulent joinder standard.   Thus, because Alvarez is a resident of the forum state and complete diversity does not exist, the Court grants Hernandez' Motion to Remand pursuant to 28 U.S.C. § 1447(c).

**V.      HERNANDEZ' ALTERNATIVE MOTIONS ARE MOOT**.

Hernandez asks the Court to consider two alternative motions if the Court does not agree with his procedural and jurisdictional arguments in support of remand pursuant to 28 U.S.C. § 1447(c).   First, Hernandez asks the Court to grant jurisdictional discovery to determine whether there were defects in the removal procedure and whether Alvarez was properly joined.   Next, Hernandez asks the Court to remand the Complaint on the alternative ground that it arises under the NMWCA and that 28 U.S.C. § 1445(c) therefore precludes removal.

**A.      THE COURT DENIES AS MOOT HERNANDEZ' REQUEST FOR JURISDICTIONAL DISCOVERY.**

In the event the Court does not grant the Motion to Remand, Hernandez requests "that the Court permit jurisdictional discovery as to whether Defendant Menlo's removal was timely and whether there are defects in removal procedure and whether co-defendant Jose Alvarez is properly joined as a defendant in this case."   Motion to Remand ¶ 31, at 12.   Because the Court grants Hernandez' Motion to Remand on the ground that Menlo Logistics and Hewlett-Packard have failed to satisfy their burden of demonstrating that Hernandez joined Alvarez for the purpose of defeating diversity jurisdiction, Hernandez' motion in the alternative for discovery is moot. Thus, the Court denies the motion.

**B.      THE COURT DENIES AS MOOT HERNANDEZ' CONDITIONAL MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1445(C).**

The Court also denies Hernandez' conditional request to remand the Complaint on the

ground that the case constitutes a "'civil action . . . arising under the workmen's compensation laws of [New Mexico],'" and, as such, 28 U.S.C. § 1445(c) precludes the removal of the Complaint to this Court.   Motion to Remand ¶ 33, at 13 (quoting 28 U.S.C. § 1445(c)). Hernandez asks the Court conditionally -- i.e., in the event the Court concludes that his exclusive remedy against Defendants Menlo Logistics and Hewlett-Packard for the injuries alleged in the Complaint is pursuant to the NMWCA -- to remand, because § 1445(c) prohibits removal of a complaint that "aris[es] under the workmen's compensation laws" of a given state.   Because the Court does not find that Hernandez' exclusive remedy is pursuant to the NMWCA, the Court concludes that Hernandez' conditional motion to remand is moot and therefore denies the motion.

**IT IS ORDERED** that the Plaintiff's Motion to Remand and Alternative Request for Jurisdictional Discovery, filed September 26, 2012 (Doc. 12) is granted in part and denied in part as follows:   (i) the Court grants the Motion to Remand; and (ii) the Court denies as moot the Alternative Request for Jurisdictional Discovery.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Joseph G. Isaac
Scherr and Legate, PLLC
El Paso, Texas

       Attorneys for the Plaintiff

Emily A. Franke
Raul P. Sedillo
Butt Thornton & Baehr, P.C.
Albuquerque, New Mexico

       Attorneys for Defendants Menlo Logistics, Inc., Hewlett-Packard, Co., and Taurus
           Southern Investments, LLC

- 81 -

Amy L. Glasser
Potts & Associates
Albuquerque, New Mexico

     Attorneys for Defendant Taurus Southern Investments, LLC